## OPINION TO THE GOVERNOR.

AUGUST 5, 1955.

PRESENT: Flynn, C. J., Capotosto, Condon and O'Connell, JJ.

August 5, 1955

To His Excellency Dennis J. Roberts
Governor of the State of Rhode Island
and Providence Plantations.

We have received from your excellency a request for our written opinion, in accordance with the provisions of section

2 of article XII of amendments to the constitution of this state, upon the following question:

"Would acceptance by the Governor of the State of Rhode Island of designation by the President of the United States under sub-section (c) of Section 287 of Chapter 7 of Title 22 of the United States Code as a special representative of the United States to the 10th Session of the General Assembly of the United Nations, to serve no longer than December 31, 1955, to act in accordance with the provisions of Section 287a of said chapter in carrying out the functions prescribed for said Assembly by Chapter IV of the Charter of the United Nations ratified by the President of the United States August 8, 1945, constitute a violation of the provisions of Section 6 of Article IX of the Constitution of the State of Rhode Island and Providence Plantations so as to vacate his office as Governor?"

The answer thereto involves an application of article IX, sec. 6, of the constitution of this state, which reads as follows: "No person holding any office under the government of the United States, or of any other state or country, shall act as a general officer, or as a member of the general assembly, unless at the time of taking his engagement he shall have resigned his office under such government; and if any general officer, senator, representative or judge shall, after his election and engagement, accept any appointment under any other government, his office under this shall be immediately vacated; but this restriction shall not apply to any person appointed to take depositions or acknowledgment of deeds, or other legal instruments, by the authority of any other state or country."

In this connection it is unnecessary to restate the history of our constitution and to establish the fact that from the beginning Rhode Island has been exceptionally jealous of its independence and sovereignty as a state. For the present problem it is sufficient to point to the explicit provisions of the above-quoted section of our constitution which are as

strong, if not stronger, than similar prohibitions found in the constitutions of the other states.

The intent of that language is clear. It was designed to secure the undivided loyalty and service of such officers to this state. The framers of the constitution deemed it prudent to prevent even the possibility of a conflict between loyalties. Therefore they dealt with the problem in two ways. In the first clause of sec. 6 they provided that no person while holding an office under any other government, state or country could act as a general officer or as a member of the general assembly. Apparently not content with this exclusion they then provided in the second clause that if any such officer or judge, after his election and engagement, accepted *any appointment* under any other government then his said office shall be immediately vacated.

In the circumstances here we are concerned only with the second provision. Whatever may have been intended by the use of the words "any appointment," as distinguished from any appointment *to an office* under any other government, it is clear in any event that the general language necessarily includes an appointment to a public office under the United States government. Therefore in order to give a construction to the words "any appointment" that will be most liberal and favorable, we shall assume for our present purpose that these words imply an appointment *to office* and not merely an appointment *of any kind whatever*.

The question then is whether the designation of a special representative of the United States to the general assembly of the United Nations constitutes a public office in the constitutional sense so that such an appointment, if accepted, would be in conflict with the provisions of the second clause of article IX, sec. 6, of our constitution.

The rule for determining what constitutes a public office in the constitutional sense has already been decided in this state. It is not governed by a consideration of whether the two offices are naturally incompatible as required at com-

mon law, because the explicit prohibition in the constitution makes them incompatible if the position in question is an office under another government. Nor is it decided by whether an oath may be required or waived; or by whether the tenure or term is of short or long duration; or by whether the incumbent is entitled to an emolument which he may desire to waive. In our judgment these are accidentals which perhaps may be considered when the basic elements are not clear. But the essential question is always to be resolved by a consideration of the nature, duties and functions of the position in order to determine whether they entitle the incumbent to exercise some portion of the sovereignty of another government.

That general question was considered by this court in *Attorney General ex rel. Adams* v. *McCaughey,* 21 R. I. 341. There the court, at page 344, adopted and quoted with approval the text of Spelling on Extraordinary Relief, §1780, as follows: "There are three principal tests for determining whether one performing duties of a public nature is a public officer, in the sense of subjecting his incumbency or employment to a *quo warranto* proceeding: First, whether the sovereignty, either directly through legislative enactment or executive appointment, or indirectly as through a municipal charter, is the source of authority; second, whether the duties pertaining to the position are of a public character—that is, due to the community in its political capacity—and third, whether the tenure is fixed and permanent for a definite period fixed by law, unless for neglect of duty or malfeasance, or subject to termination at the will of others without the assignment of cause."

In connection with the same subject, this court in an earlier case, *State* v. *Brown,* 5 R. I. 1, held in effect that it does not change the constitution to say that such an appointee or designee would avoid the conflicts contemplated by the constitution by conducting himself so as "to be clear" in both offices. It is therein stated at page 10: "The law is

adapted not to individual and exceptional cases, but to human nature as it ordinarily exhibits itself; and it cannot afford to dispense with the well-known guards of common policy for the chance of now and then stumbling upon a bright example, or producing a startling effect. The question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility, or even a probability, that the defendant might duly perform the duties of both." See *In re Corliss*, 11 R. I. 638. See also *Opinion to the Governor*, 67 R. I. 197, and *State ex rel. Costello* v. *Powers*, 80 R. I. 390. In other words if the incumbent of a position at some time is entitled thereby to exercise a portion of the sovereignty of the United States government within the area or limitations prescribed by law, the other conditions being also present, then he is a public officer and his position is a public office in the constitutional sense.

In order to apply these tests it is necessary to examine first the act of congress which created or authorized the position of special representative of the United States to the assembly of the United Nations. The pertinent provisions of the law, which is known as the "United Nations Participation Act of 1945," appear in Title 22, U.S.C.A., §287, paragraphs (a), (b) and (c), p. 130, and in §287a, p. 141. Paragraph (a) of §287 reads as follows:

"The President, by and with the advice and consent of the Senate, shall appoint a representative and a deputy representative of the United States to the United Nations, both of whom shall have the rank and status of envoy extraordinary and ambassador plenipotentiary and shall hold office at the pleasure of the President. Such representative and deputy representative shall represent the United States in the Security Council of the United Nations and may serve ex officio as United States representative on any organ, commission, or other body of the United Nations other than specialized agencies of the United Nations, and shall perform such other functions in connection with the participation of

the United States in the United Nations as the President may ·from time to time direct."

Paragraph (b) provides for an additional deputy representative of the United States to the security council and he also is appointed by the president with the advice and consent of the senate. Then follows paragraph (c) which creates or authorizes the position of a special representative as follows:

"The President, by and with the advice and consent of the Senate, shall designate from time to time to attend a specified session or specified sessions of the General Assembly of the United Nations not to exceed five representatives of the United States and such number of alternates as he may determine consistent with the rules of procedure of the General Assembly. One of the representatives shall be designated as the senior representative."

It has been suggested to us that the United States department of state does not deem the designation of a special representative as an appointment to office. Apparently this view is based largely on the fact that congress in paragraph (c) used the words "shall designate" representatives rather than "shall appoint" representatives, which latter expression was used in paragraphs (a) and (b) of the same section. However, we have been referred to no official ruling of the department of state so construing the act of congress, nor to any opinion of the attorney general of the United States so advising the department of state, and we are aware of no opinion of the United States supreme court or of any United States court of appeals to that effect.

While we note this change in the language of paragraph (c) from that used in paragraphs (a) and (b)', the authorization therein is no less an appointment in the constitutional sense. Indeed the language of paragraph (c) amounts actually to a precise definition of an appointment.

According to Webster's New International Dictionary (2d ed.), to "appoint" is "1. To fix with power"; "3. To

assign, designate, or set apart, by authority." The verb "designate" means "3. To indicate or set apart for a purpose or duty"; and "designation" means "2. Selection or appointment for a purpose." The same authority also states that "representative" means "2. Being, or acting as, the agent for another, esp. through delegated authority." On the other hand "appointment" is defined therein under 1. e: "Designation of a person to hold an office or discharge a trust." A similar definition is found in 1 Bouvier (3d ed.) p. 215, where "appointment" is defined as "The designation of a person, by a person or persons having authority therefor, to discharge the duties of some office or trust." To the same effect see Black's Law Dictionary (4th ed.), p. 128. Thus by applying the definition of the words used, the *designation* of a representative of the United States to the assembly of the United Nations is essentially an appointment of a representative of the United States to such organization. It is noted that the law authorizes the designation of a representative of the United States and *not of the president personally*.

However, it has been intimated to us that congress desired to make it possible for a member of that body to accept such a position; that it therefore used the language of paragraph (c) on the theory that a designation would not be an appointment; and that thereby it purported to absolve a member of congress, who accepted, from violating article I, sec. 6, of the federal constitution which provides that "no person holding any office under the United States shall be a member of either house during his continuance in office."

We have no authoritative information as to such a purpose. However, if the congress acted from such motives, in our opinion they followed a false light and accomplished nothing by the change from "appoint" to "designate." Whether congress used one or the other expression they could not alter the true nature, duties and functions of the position of representative of the United States in the general assem-

bly of the United Nations as specified in the latter's charter. And further, whatever may have been intended by congress in using different language, the words in paragraph (c) actually connote the definition of an appointment of a person to represent the United States in the assembly of the United Nations by virtue of duly delegated authority.

Moreover it is to be noted that the law requires such a special representative under paragraph (c) to be designated and confirmed by the same procedure as that required of an appointment under paragraphs (a) and (b), which clearly are *appointments* to office. This does not indicate an intent of congress to consider a special representative in an essentially different category so far as public office is concerned Nor does the fact that the president may veto the recommendations or direct the vote of a representative in accordance with an established policy, §287a, or that he may supersede an incumbent, as provided in §287 (e), effect a supposed change in the nature of the position. The same limitations are placed upon the positions described in paragraphs (a) and (b), and these positions are therein expressly called appointments.

If the powers and duties incident to the position of special representative constitute an office in the constitutional sense under the United States government, we do not agree that the change of language from "appoint" to "designate" can transform it into mere employment, empty of any power or authority. In our view when the representatives of the United States under any of these paragraphs vote, either by direction of the president and state department or in accordance with their own recommendations which have not been vetoed, they are acting and voting as *representatives of the United States* and are by delegation sharing part of the sovereignty of the constituted authority of the United States government.

A search of other provisions of the Participation Act of 1945 fails to reveal any express specifications of the duties

of a special representative designated under paragraph (c). Therefore we must refer to the charter and statutes of the United Nations to learn the nature of such powers and duties.

It will not be feasible to recount all the duties, functions and privileges of such a special representative under the charter and various statutes of the United Nations. Suffice it to point out that such a representative exercises, directly or indirectly, many powers and duties in connection with a variety of subject matters which come before the general assembly of the United Nations and which materially affect the peace, welfare and constitutional government of the United States. In addition to privileges of directly debating, discussing and recommending action initiated in the general assembly of the United Nations, such representative has the right to participate indirectly in the vote which is cast for the United States on many important decisions affecting the peace and welfare of this nation and its relations with foreign nations.

While the member nations are entitled to only one vote, each of them is entitled to have five special representatives in the general assembly. Consequently, from the viewpoint of the United Nations and in the absence of veto or direction by the president, when a vote is cast by one representative of the United States it is not only the vote of this nation but also reflects the participation therein by the special representatives of the United States in the general assembly. It is true that such a special representative's discretion is limited to an extent, but he is nonetheless a participant as a representative of the United States in the exercise of an act of sovereignty.

The following is a brief summary of some of the extensive powers and functions of the general assembly of the United Nations.

(1) The general assembly votes, upon recommendation of the security council, for the admission of nations to mem-

380

bership in and for the suspension or expulsion of members from the United Nations. Charter, chapter II, articles 4, 5, 6.

(2) It has the right to select a person to fill the office of secretary-general of the United Nations. Chapter XV, art. 97. That officer is virtually the executive head of the United Nations, with such broad powers concerning administration, appropriations and personnel of the United Nations that he exercises tremendous influence in international affairs affecting the member nations including the United States.

(3) It selects the six nonpermanent members of the security council of eleven which is established under the charter, chapter V, art. 23, and exercises most of the powers that affect any nation whose conduct subjects it to the disciplinary authority of the United Nations organization.

(4) It elects eighteen members of the economic and social council under chapter X, art. 61. This is an agency of growing interest and importance since its considerations, recommendations and actions may well affect materially the economy and indirectly the taxpayers of the United States and the states of the Union.

(5) It selects a trusteeship council to implement and administer the trusteeship system of administration and supervision provided for territories not yet ready for self-government. Chapter XI, art. 73, and chapter XIII, art. 86.

(6) It elects members of the International Court of Justice, which is established under chapter XIV, art. 92. Chapter I, art. 4, of the Statute of the International Court of Justice. Under chapter II, art. 36 of such statute its jurisdiction includes the interpretation of a treaty, any questions of international law, the existence of any fact which if established would constitute a breach of an international obligation, and the nature and extent of the reparation to be made for such breach. The statement of its comprehensive jurisdiction suggests the possibility of conflicts with the constitution of the United States.

In addition to the officers and agencies referred to, there are numerous other committees or councils performing more or less important functions of the United Nations, which has been held by the International Court of Justice to be "an international personality" capable of suing for reparations from a member or nonmember state and of deciding questions as to the rights of United States nationals in a foreign country.

The mere references to all these various activities do not present a complete picture of the nature of the powers, duties and functions in which a special representative of the United States participates in some degree. However, when studied with reference to the great scope, power and influence exercised by the officers and agencies in whose selection a special representative has the right to participate in formulating the vote to be cast for his nation, subject only to possible veto or direction by the president through the state department, it is difficult for us to conclude that such a representative of the United States was intended to function only as a mere employee.

In our opinion such representative occupies a public office of honor, trust and profit, whether considered from the terms of its creation and authorization, or from the nature of the duties and powers prescribed under the United Nations charter and statutes. We are of the opinion that in so functioning, whether he acts on direction of the president or in accordance with his own recommendations to the president which are not vetoed, the incumbent has the right to exercise by delegation, directly or indirectly, some portion of the sovereign power of the United States in place of the constituted authority thereof. In other words the nature and character of the duties and functions imposed upon a special representative meet all the tests applied by this court in *Attorney General ex rel. Adams* v. *McCaughey, supra,* and in particular the incumbent at least shares in

and exercises a portion of the sovereignty of the United States.

It has been suggested that our representatives in the assembly of the United Nations make no decisions on matters coming before them but vote only through one representative on specific instructions from the president or the department of state. We have no means of knowing whether that method is always followed. But whether or not it is followed, it would not necessarily deprive representatives in the general assembly of the status of officers who participate in the exercise of some portion of the sovereign powers of the United States. If it does deprive them of such status, then our representatives in the security council appointed under paragraphs (a) and (b) of §287, who have the standing of ambassadors, would not be officers but would be mere employees, since §287a of the Participation Act of 1945 expressly provides that all of them "shall, at all times, act in accordance with the instructions of the President." In our opinion, however, this practice, if existent, does not prevent them from being officers of the United States, and in this respect the status of a representative as an officer does not differ essentially from that of certain diplomatic officers abroad who exercise their powers under instructions of the president through the department of state, or that of military or naval officers who are subject to the orders of the president as commander-in-chief.

In the short time at our disposal we have searched to find some pertinent opinion of the United States supreme court or of a federal court of appeals which might have interpreted the nature and duties of an appointee or designee to the United Nations. However, so far as we are aware there is no such case. Nor have we found a pertinent opinion of the United States attorney general to the effect that such a special representative is not a public officer under the United States constitution. We have been apprised of an opinion by the attorney general of South Carolina,

but we do not deem such opinion to be persuasive as a constitutional precedent in determining the question before us. Significantly the supreme court of that state has not so ruled, and so far as we are aware no supreme court of any other state has decided to that effect. In the circumstances, therefore, we must rely on our own construction of the Participation Act of 1945 and the United Nations charter, with such help as we may obtain from prior decisions of this court.

Here as early as 1876 this court had occasion to consider whether an appointment to the office of commissioner of the United States Centennial Commission was an office of trust under article II, sec. 2, of the constitution of the United States. In an opinion of the justices to the governor in the case of *In re Corliss,* 11 R. I. 638, it was stated, among other things, that such an appointment was an office in the constitutional sense because the duties thereof, in pursuance of statutory direction and authority, were not to be regarded as functions of mere employees, agents or committeemen but that they were, properly speaking, officers, and that the places which they held were offices. In the absence of an opinion of the United States supreme court or of a United States court of appeals to the contrary, we consider that opinion as stating the law concerning the nature of such an appointment.

Further, if the duties of the appointment described in the *Corliss* case are to be considered as constituting a public office under the United States, then *a fortiori* the power, duties and responsibilities of a special representative of the United States to the United Nations, who as above indicated participates in important votes of this nation, would amount to the exercise of some portion of the sovereignty of the United States and would constitute a public office.

That conclusion is also in accord with the great weight of authority generally as expressed by the decided cases. Many of these are collected under the annotation in 100

A.L.R. 1162, but more particularly under note III, p. 1170, which states that "if the holding of two offices by the same person, at the same time, is inhibited by the Constitution or statute, a forbidden incompatibility is created similar in its effect to that of the common law, and, as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second office of the kind prohibited operates, ipso facto, to absolutely vacate the first office."

Therefore applying the above-mentioned tests and law to the powers and duties of a special representative as we gather them from the Participation Act of 1945 and from the charter and statutes of the United Nations, we are constrained to conclude that a duly designated representative of the United States in the general assembly of the United Nations, who accepts and qualifies in such position, holds a public office under another government.

Consequently we are of the opinion that a person holding the office of governor, who accepts and qualifies as such a representative in the general assembly of the United Nations, pursuant to the sections specified in the question as propounded, would do so in violation of article IX, sec. 6, of the constitution of this state and thereby would immediately vacate his office of governor.

EDMUND W. FLYNN

ANTONIO A. CAPOTOSTO

FRANCIS B. CONDON

JEREMIAH E. O'CONNELL