**Ethel O. LITTLETON, as Administratrix of the Estate of Asa June Busby, Deceased, et al., Plaintiffs,**

v.

**The VITRO CORPORATION OF AMERICA, a corporation, the United States of America, and the Tennessee Valley Authority, a corporation, et al., Defendants.**

**Civ. A. No. 920.**

United States District Court
N. D. Alabama, Northwestern Division.

May 5, 1955.

As Modified May 12, 1955.

Mitchell & Poellnitz and E. L. Cole-back, Florence, Ala., for plaintiffs.

Andrews & Almon, Sheffield, Ala., for Vitro Corp. of America.

Frank M. Johnson, Jr., U. S. Atty., Birmingham, Ala., for the United States.

Joseph C. Swidler, General Counsel, Knoxville, Tenn., Charles J. McCarthy, Sol., Knoxville, Tenn., Patrick B. Harris, Tuscumbia, Ala., and Sol M. Edidin, Knoxville, Tenn., for Tennessee Valley Authority.

GROOMS, District Judge.

This case was submitted upon a motion for summary judgment filed by the Tennessee Valley Authority (hereinafter referred to as TVA), supported by the affidavits of Daniel O. Walstad and Charles H. Young.

In 1951, the Department of the Army and the TVA executed an agreement regarding the construction, maintenance and operation of a chemical facility on the TVA Reservation at Wilson Dam, Alabama. This contract provided that the Corps of Engineers would construct or cause to be constructed said facility. The contract further provided that upon completion of the construction, the Chemical Corps would conduct preliminary operations thereof and determine whether the facility was in proper operating condition, and after such a determination the TVA would assume custody, control and have direct responsibility for the operation and maintenance of the plant, subject to the general supervision of the Chemical Corps.

The Department of the Army contracted with the Vitro Corporation for the design and construction of the project. Vitro had no connection contractual or otherwise with TVA.

In the latter part of 1951, a number of TVA employees were assigned to the project to study the process employed and to familiarize themselves with the operation of the facility. On May 5, 1953, certain of the facilities had been completed to the testing stage. Vitro was short of technical personnel and Walstad was loaned to that corporation to assist in the conduct of the test run. Walstad, as well as all other TVA personnel, was under the complete control, direction and supervision of Vitro during the run. The TVA personnel had no discretion to change any of the arrangements or details of operations, but were required to proceed in complete accord with the plans set up by Vitro and were under the complete direction, supervision and control of Vitro supervisory personnel.

On May 18, 1953, while the test run was in progress, a piece of equipment exploded and Asa June Busby was killed. Busby was an employee of Southern Contractors, a contractor engaged in the construction of the project. At the time of Busby's death, TVA had not assumed custody or control of any part of the facility.

Under the rule sometimes called the "loaned servant" doctrine [1] and under the undisputed facts shown by the affidavits, TVA is not liable. The contract between the Defense Department and the TVA contemplates that the latter should have no connection with the project until it was determined to be commercially operable. The responsibility for conducting test operations was Vitro's and not TVA's. Furthermore, the facts disclose that there was no neg-

1. Standard Oil Co. v. Anderson, 1909, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Denton v. Yazoo & M. V. R. R., 1932, 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310; Martin v. Anniston Foundry Co., 1953, 259 Ala. 633, 68 So.2d 323; Williams v. Central of Georgia R. Co., 1929, 220 Ala. 298, 124 So. 878.

ligence on the part of the TVA personnel that would impose liability on the TVA. The participation by the TVA personnel in the operation of a new process with which they were not familiar in strict accordance with the plans and instructions of the designers of the process would not constitute negligence on the part of the TVA in the absence of evidence that such plans and instructions were so apparently and obviously defective as to put such personnel on notice that the work was dangerous and likely to cause injury.[2]

This case presents a further legal hurdle which, in the Court's opinion, bars recovery. The complaint in this action recites that it is brought under the Federal Tort Claims Act. Since TVA is excepted from the provisions of the Federal Tort Claims Act, Title 28 U.S.C.A. § 2680(*l*), the plaintiff now insists that the action is properly brought under the Alabama Homicide Act, Code 1940, Tit. 7, § 123.

It has been repeatedly held that the Alabama Homicide Statute is punitive and that the damages recoverable are punitive and not compensatory.[3] Neither the United States nor its instrumentalities, in the absence of the express consent of Congress, is liable for punitive damages. Missouri Pac. R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087. The rule in the Ault case has been applied by the Alabama Supreme Court to actions under the Alabama Homicide Act.[4]

It does not follow from the fact that the TVA may be sued in tort[5] that punitive damages may be recovered in a tort action against that agency. It will be observed from the Federal Tort Claims Act that the United States is not liable for punitive damages in an action under that Act. The Act was amended to provide that in those states wherein the damages were punitive in nature the United States would be liable for actual or compensatory damages. Before the amendment an action under the Alabama Homicide Act would not lie against the United States.[6] In view of the fact that it has long been recognized that the United States is not subject to an action for punitive damages, this provision of the Tort Claims Act proscribing punitive damages did not carve out an exemption but merely crystalized and gave legislative recognition to an existing status. A holding that TVA, a governmental agency, is liable for punitive damages under the Alabama Homicide Act, would present an anomalous situation in face of the proscription against punitive damages in death actions against the United States arising from torts of numerous other governmental agencies governed by the Tort Claims Act. I am of the opinion, therefore, that since damages under the Alabama Homicide Act are wholly punitive the TVA is not subject to suit under that Act.

A judgment will be entered granting the motion for summary judgment.

2. 65 C.J.S., Negligence, § 95, p. 615; Southern Pac. Co. v. Berkshire, 1921, 254 U.S. 415, 41 S.Ct. 162, 65 L.Ed. 335; Norfolk & W. R. Co. v. Hall, 4 Cir., 1932, 57 F.2d 1004; De Eugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 1954, 210 F. 2d 409, 413.

3. Alabama Power Co. v. Stogner, 1922, 208 Ala. 666, 95 So. 151; Howard v. Davis, 1923, 209 Ala. 113, 95 So. 354; Heidtmueller v. Davis, 1924, 210 Ala. 548, 98 So. 791; Hampton v. Roberson, 1935, 231 Ala. 55, 163 So. 644; Parker v. Fies & Sons, 1942, 243 Ala. 348, 10

So.2d 13; Heath v. United States, D.C. N.D.Ala.1949, 85 F.Supp. 196; United States Cast Iron Pipe & Foundry Co. v. Sullivan, 5 Cir., 1925, 3 F.2d 794.

4. Howard v. Davis, 209 Ala. 113, 95 So. 354; Heidtmueller v. Davis, 210 Ala. 548, 98 So. 791.

5. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784.

6. See report of House Judiciary Committee, Heath v. United States, D.C., 85 F.Supp. 196, 198.