Sue FOWLER

v.

TENNESSEE VALLEY AUTHORITY.

Ruby LEWIS

v.

TENNESSEE VALLEY AUTHORITY.

Nos. 3688, 3689.

United States District Court
E. D. Tennessee, S. D.

May 19, 1962.

On Further Motion For Summary
Judgment July 10, 1962.

Gearinger, Banks & Hutcheson, Chattanooga, Tenn., for plaintiff.

Charles J. McCarthy, Thomas A. Pedersen, S. David Freeman, T. V. A.-Knoxville, Tenn., for defendant.

FRANK W. WILSON, District Judge.

These two suits are actions for alleged wrongful death of two men who were electrocuted when the television antenna which they were attempting to install on a roof came in contact with a high voltage power line. The accident occurred upon March 17, 1960 at McMinnville, Tennessee. It was originally alleged that both the Tennessee Valley Authority and the McMinnville Electric System were responsible for the conditions causing the deaths, but the suits have subsequently been dismissed as to McMinnville Electric System and remain pending only as to the TVA. The plaintiffs seek damages for wrongful death in the first count of the complaints, seek damages for mutilation of the decedents' bodies in the second count of the complaints and seek punitive damages in the third count of the complaints.

The cases are now before the Court upon the defendant's motions for summary judgment as to each count in the complaints. The grounds upon which the TVA seeks summary judgment are as follows:

(1) The TVA owed no duty to the decedents.

(2) The decedents were guilty of contributory negligence as a matter of law.

(3) Mutilation of a body which accompanies an accidental killing does not give rise to a cause of action.

(4) An action for punitive damages will not lie against the TVA.

In support of its motions the TVA has filed two affidavits. One affidavit is that of Clyde Winters, the manager of the McMinnville Electric System, who states that the electric lines at the point of the electrocution were the lines of the McMinnville Electric System and that the TVA had no ownership of or responsibility for said line. The other affidavit was that of Kenneth E. Hapgood, the director of the Power Planning and Engineering Division, Tennessee Valley Authority, who explains that the automatic oil circuit breaker located at the substation where power is delivered by the TVA to the McMinnville Electric System was installed to protect the TVA equipment, not the McMinnville lines, and to assure continuity of service by preventing more than momentary interruptions by faults which are temporary or of insufficient magnitude to damage TVA equipment. He further explains in a general way the operation of auto-

matic oil circuit breakers. By its answer the TVA denies that it was in any way responsible for the electric lines at the point where the electrocution occurred, these lines being alleged to be the sole responsibility of McMinnville Electric System and the TVA substation for delivery of power to the McMinnville System being located approximately one and one-half miles from the scene of the accident. A verified copy of the contract between the TVA and the McMinnville Electric System filed as an exhibit to the answer contains provisions which relieve each of the parties thereto from any responsibility for the other party's lines or for installing at any delivery point equipment for the protection of the other's facilities.

Upon the basis of the record in this cause it therefore appears undisputed that this accident occurred upon lines belonging to the McMinnville Electric System and that the TVA's only connection with the accident arises from the fact that it supplied electric power to the McMinnville System. An automatic circuit breaker was located nearby at the TVA substation at which TVA's lines ended and McMinnville's began.

Upon this state of facts, the TVA contends that it would owe no duty to the decedents and would therefore not be liable either for the wrongful deaths or alleged mutilation of the bodies. The plaintiffs on the other hand claim that although the TVA did not own the electrical lines at the point of the accident, that by the installation of the automatic circuit breaker and the manner of its operation the TVA thereby assumed a responsibility for the McMinnville lines and incurred a duty toward the plaintiffs' decedents. The plaintiffs further claim that the automatic circuit breaker of TVA shut off the current when the decedents first brought the antenna into contact with the ·McMinnville line, and was then either re-engaged manually by a TVA agent who was negligent in failing to ascertain that such re-engagement would be safe, or was automatically re-engaged by the circuit breaker, which then malfunctioned and failed to break the current again.

■■ It is well settled in Tennessee that a supplier of electricity has no duty to inspect the lines of its customers and is generally not liable for any injuries which occur upon such lines. Dabbs v. Tennessee Valley Authority, 194 Tenn. 185, 250 S.W.2d 67. The Dabbs case, however, recognizes two exceptions to this rule. One exception occurs when the supplier receives notice of a defect or dangerous condition on the lines of its customer. In this situation the supplier has a duty to exercise the "highest or utmost degree of care" to prevent harm to its customers or third persons by reason of the defect or dangerous condition. Null v. Electric Power Board of Nashville, 30 Tenn.App. 696, 210 S.W.2d 490. The other exception to the general rule of nonliability on the part of a supplier occurs when the supplier in some manner assumes responsibility for its customer's lines. The Dabbs case is not very explicit upon this point, but it appears that such an assumption places the supplier in the same position as the owner of the lines, and its duty is again to exercise the highest and utmost degree of care to prevent injury.

The plaintiffs rely upon both of these exceptions, claiming that TVA's installation of the automatic circuit breaker constituted an assumption by TVA of responsibility for McMinnville's lines and that the operation of the automatic circuit breaker constituted notice to the TVA of a defect or dangerous condition upon the McMinnville lines.

In the Dabbs case, the Court declined to apply the assumption theory, stating:

"The declaration does not allege that the automatic switch at the Parsons Sub-station was intended to protect the lines of the Cooperative; there is no allegation that TVA undertook to maintain that switch for the benefit of the Cooperative; there is no allegation that the Cooperative relied on the presence of the automatic switch."

In the present case the plaintiffs allege in their complaints that TVA did undertake and intend to maintain its circuit breaker for the benefit of McMinnville, and that McMinnville relied upon such circuit breaker. On the other hand, TVA has filed the affidavit of Kenneth E. Hapgood, stating as summarized above, that the circuit breaker was installed solely for the protection of the TVA facilities and to assure continuity of service. There is no counter affidavit. The affidavit of Mr. Hapgood would therefore effectively contradict the allegation of the complaints that the circuit breaker was for the protection of McMinnville's lines and that the TVA had therefore assumed the responsibility for McMinnville's lines. Consequently, insofar as the plaintiffs seek recovery upon the theory that TVA had assumed responsibility for McMinnville's lines, the motion for summary judgment must be sustained, the plaintiff having produced no evidence to show that there is a genuine dispute of fact upon this point. Appolonio v. Baxter, 6 Cir., 217 F.2d 267; 3 Barron & Holtzoff, Federal Practice and Procedure, § 1235.1.

The only remaining theory upon which the plaintiffs might be entitled to recover would be upon the plaintiffs' contention that the TVA received notice of a defect or dangerous condition upon the McMinnville lines by the automatic disengagement of the circuit breaker. It is alleged by the plaintiffs that the operation of the automatic circuit breaker was in itself notice to the TVA of a defect or dangerous condition upon the McMinnville lines. It is also contended by the plaintiffs, in the alternative, that the flow of current was either automatically and/or manually restored, thus inferring actual notice to the TVA employee alleged to have manually restored the flow of current. Upon the other hand, it does not appear from the record the exact manner in which the circuit breakers operated upon this occasion, whether it was or was not defective in its operation, whether it was or was not manually reset or whether it did or did not give any type of notice to the TVA of a defect or dangerous condition upon the lines of its customer. In addition the parties have not briefed the notice question at all, the plaintiffs having assumed that the disengagement of the circuit breaker constituted notice and the TVA having assumed that it did not. In this respect it does not appear that the proof is sufficiently developed for the plaintiffs' claim to be put out summarily.

It would appear however that the facts might be fully developed as to the actual operation of the circuit breaker upon this occasion as to its supervision or observation by any TVA agent and as to the circumstances under which the flow of electricity was restored, whether manually or automatically, and if automatically whether as a result of any malfunction of the circuit breaker. Should these matters appear undisputed in the record it might then be possible to consider further the legal issues as to whether the TVA would have such notice as to impose upon it a duty to use the highest and utmost degree of care to prevent harm to third persons injured upon the lines of its customers. Even though the facts were undisputed, there appears to be a scarcity of legal precedent in this field and further briefing of the issue would be appropriate. See 57 A.L.R. 1065. These legal issues must be met at some stage in the trial of these cases and it would appear appropriate that this should be done before the time and expense of trials are incurred. Therefore, in overruling the motion for summary judgment upon the ground stated above, the Court is not precluding the filing of further motions, affidavits, counter affidavits or discovery.

Having resolved the issue as to whether the TVA owed any duty unto the plaintiffs' decedents adversely to the TVA there remain for consideration the additional grounds in the motion for summary judgment. The second contention of the TVA is that the decedents were guilty of contributory negligence as a matter of law. The factual allegations before the Court in this regard are

those contained in the complaints and the answers. The complaints are vague as to the manner in which the antenna came into contact with the high voltage line. However, detailed and specific pleading are not required under the Federal Rules, with discovery and other means of disclosure being available to provide the specifics of general allegations in the pleadings. Moreover, there were two decedents and while one may have been guilty of contributory negligence, the other may have been free of such negligence. It is impossible to determine these matters with definiteness at this time. Moreover, even though it were assumed that both of the decedents were guilty of contributory negligence in first bringing the antenna into contact with the high voltage line, still it is the second shock, after a break in the current, which the plaintiffs insist constitutes the negligence of TVA. This therefore might be a situation in which the last clear chance doctrine might apply. The motion for summary judgment will therefore be overruled as to this ground.

 The third basis for a motion for summary judgment is founded upon the contention that the mutilation of a body which accompanies a killing does not give rise to a cause of action. This ground of the motion is directed specifically to count three in each complaint.

The complaints allege that when the antenna first came into contact with the power line, the shock knocked the decedents off of the roof onto the ground, rendering them unconscious, and that the TVA's automatic circuit breaker shut off the flow of electricity through the line. Then, according to the complaints, the power resumed, either automatically or because an agent of the TVA re-engaged the switch manually. The complaints further state that it was the second shock which both killed and mutilated the bodies of the decedents.

The defendant points out that under the law the mutilation of a corpse which accompanies a killing is not actionable, so that, for example, a person who is struck and killed by a train, and whose corpse is then mutilated by the wheels of the car, has not been mutilated under such circumstances as to give rise to a cause of action for mutilation on the part of his next of kin.

"For any mutilation incident to death, there would seem to be no separate liability, but for any further mutilation of the body after death, if done willfully, recklessly, wantonly, unlawfully or negligently, there is liability." 15 Am.Jur., "Dead Bodies", Sec. 26.

The plaintiffs concede that this is the law, but say that the decedents may have been killed by the first shock, in which case they admit that they would have no cause of action for wrongful death, but contend that they might have one for mutilation under their allegation that it was the second shock which mutilated the bodies. The plaintiffs contend that the question of which shock killed the decedents is a jury question and that they should not be required to elect between an action for mutilation and an action for wrongful death before a jury has determined the factual question as to precisely how the decedents were killed.

That the plaintiffs are entitled to make such inconsistent claims is established by Rule 8(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A., where it is provided that:

"A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or both."

In this regard see also 1A Barron & Holtzoff, Federal Practice and Procedure, § 282, where it is stated:

"Since a party is permitted to allege inconsistent claims and defenses, he may not subsequently be required to elect among them, but is

entitled to have all of his claims and defenses considered by the trier of the facts. Similarly, the doctrine of election of remedies is inapplicable under the rules."

A further problem is raised in this connection, however, by the status of the complaints. The first and second counts of the complaints do not actually make alternative claims. The first count merely states that the decedents were alive after the first shock and killed by the second shock. The second count of the complaints adopts the first count and therefore alleges that they were alive after the first shock and both killed and mutilated by the second shock. Upon this state of the record it would appear that the motion for summary judgment on the second count of the complaints would be valid under the authority cited above, for the plaintiffs cannot recover for a mutilation which was caused by the act and occurrence which itself caused the death.

The fourth ground of the motion for summary judgment is based upon the proposition that an action for punitive damages will not lie against the TVA. This is directed specifically to the third count of each complaint. There does not appear to be any dispute as to the validity of this contention and the motion for summary judgment as to the third count of each complaint will be sustained. Littleton v. Vitro Corporation of America, 130 F.Supp. 774 (N.D.Ala., 1955).

An order will be entered accordingly.

## ON FURTHER MOTION FOR SUMMARY JUDGMENT

A further motion for summary judgment has now been filed together with affidavits and counter-affidavits. The Tennessee Valley Authority has now filed affidavits describing the operation of the circuit breaker involved in the lawsuit upon the date and at the time of the accident complained of. The plaintiffs have filed their counter-affidavits as eye-witnesses describing the electrocution and stating therein that after the initial shock the electricity appeared to remain off shortly, and then to resume, causing the decedents' bodies to be consumed in electric flames for some fifteen minutes, whereupon the electricity appeared to again cut off.

According to the affidavit of Kenneth E. Hapgood, Director of the Power Planning and Engineering Division of the Tennessee Valley Authority, the automatic circuit breaker, the operation of which is involved in this lawsuit, was of standard and usual design and operation and was operating both before and after the time of the accident herein involved, as well as at the particular time of the accident, in the manner in which it was designed and expected to operate. It appears from the affidavit that the automatic circuit breaker was designed to restore the circuit automatically. This process would repeat in rapid sequence two more times if the overload was not itself a transient condition, but if the overload persisted the circuit would then automatically lock open and could only be thereafter closed by manual operation. It is stated that the purpose of the automatic sequence, followed by the manual closing of the circuit, was to assure on the one hand uninterrupted electric power service when only momentary or passing overloads occur, while on the other hand protecting the TVA equipment from damage by requiring manual resetting where an overload was not a temporary or transient condition but persisted, this manual operation thereby giving the TVA opportunity to inspect the lines. It further appears from this affidavit that automatic record devices indicated that at the date and time of the fatal accident the circuit breaker automatically interrupted current for fifteen seconds, and that current was then restored without the circuit breaker going any further through the automatic cycle and without requiring any manual resetting. It appears that this particular circuit breaker has operated successfully 356 times without incident prior to the date of the accident and that during 1959 there were 52,000 such automatic opera-

tions at circuit breakers on the TVA system with approximately 17,000 such automatic operations occurring during the first three calendar months of 1960.

The affidavit of J. P. Davidson, an employee of the TVA and the operator of the substation at which the subject circuit breaker was located, verifies the statement of Mr. Hapgood with regard to the normal and proper functioning of the circuit breaker upon the date involved and further states that this incident occurred at 7:24 p. m. at a time when the substation was not manned but rather was upon automatic operation.

On the basis of the record as it now exists in this case it appears that the motion for summary judgment made on behalf of the defendant should be sustained. Not only is there a total lack of any evidence of a failure upon the part of the TVA to use that care required of the supplier of electricity, but on the contrary it affirmatively appears that the equipment involved was properly functioning and did properly function upon this occasion. This accident occurred more than two years ago and the case has now been pending for more than a year. Should the plaintiffs feel that the facts are any different with regard to the operation of the TVA substation and the circuit breaker than as stated in the affidavits filed by the TVA, the plaintiffs have had ample time and opportunity to investigate and discover these matters. But the plaintiffs do not in any way dispute the matters set forth in the TVA affidavits other than to contend that an inference may be drawn that something was wrong with the TVA circuit breaker in not continuing through the automatic cycle until a manual resetting was required, since the plaintiffs' affidavits show that the television antenna remained in contact with the high voltage line.

As has been heretofore conceded in the case, this accident occurred upon the lines of the McMinnville Electric System, not upon the lines of the Tennessee Valley Authority. The duty to use the high-est and utmost degree of care imposed upon a supplier of electricity would apply to the TVA, under the ruling in the case of Dabbs v. Tennessee Valley Authority, 194 Tenn. 185, 250 S.W.2d 67, only where the TVA as the supplier of the McMinnville Electric Company, received notice of the defective or dangerous condition upon the lines of its customer. It is undisputed in this case that the TVA received no actual notice of the antenna coming in contact with the McMinnville lines. Likewise there is no evidence upon which the TVA might be held to have had constructive notice. The fifteen second automatic interruption could not constitute such notice. On the contrary, the restoration of current within fifteen seconds by a circuit breaker which was properly functioning according to the undisputed testimony could only indicate that no significant overload continued to exist on the lines of its customer. To hold otherwise would mean that electric suppliers using automatic circuit breakers would be required to design their equipment so that each overload, whether transient or not, would break the circuit and thereupon the circuit would remain broken until the source or possible sources of the overload were investigated and determined upon all of the lines supplied. When it is recognized that the automatic circuit breakers function an average of 1,000 times per week in a system the size of the TVA, it is apparent that if the standard of care contended for by the plaintiffs were required of an electric supplier, and the supplier was thereby put on constructive notice to discontinue electric service and investigate its customers' lines each time there was a momentary overload, either no electricity would be supplied and the electric companies would spend all of their time patrolling lines, or otherwise the Court would be imposing absolute liability upon any supplier of electricity.

It is therefore the opinion of the Court that the motion for summary judgment filed by the defendant should be sustained and each of these suits dismissed. Proper orders will enter accordingly.