Suzanne SENTNER and William
Sentner, Plaintiffs,

v.

AMTRAK (a/k/a National Railroad
Passenger Corporation), Defendant.

Civ. A. No. 81–1735.

United States District Court,
D. New Jersey.

June 1, 1982.

Bernard Shapiro, Kaplan, Friedman & Zand, Brooklyn, N. Y., for plaintiffs.

Ellen Paul, Stockman, Mancino, Smithson, O'Donnell & Sypek, Trenton, N. J., for plaintiffs Robbins.

Charles Krause, Speiser & Krause, New York City, for Amtrak.

Bennett J. Wasserman, Hackensack, N. J., liaison counsel in Amtrak actions.

Bernard J. Smolens, Schander, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs Amick.

## OPINION

WHIPPLE, Senior District Judge.

■ This action [1] arises as a result of an accident involving two trains operated by

---

1. This case was transferred by the Judicial Panel on Multidistrict Litigation, pursuant to 28

defendant, the National Railroad Passenger Corporation (N.R.C.P., also referred to herein by its popular name, Amtrak), wherein one train, a passenger train, was struck and impaled by a section of rail which apparently was lying unsecured and askew on the flatbed of a passing maintenance train. Suzanne Sentner is one of a number of passengers severely injured in the collision. Mrs. Sentner and her husband have sued in common law negligence for compensatory damages, and now move the Court for leave pursuant to Fed.R.Civ.P. 15(a) to amend their complaint to include an additional claim for punitive damages.[2] Though the factual merits of plaintiff's proposed claim are not under consideration here, plaintiffs represent that discovery conducted to date in this case has revealed evidence of "gross, wanton and reckless negligence" on defend-ant's part which would support an award of exemplary damages.

Rule 15 provides for amendment to the pleadings when "justice so requires." Leave to amend pleadings may be properly denied by the Court when the claim sought to be interposed is legally inappropriate. *Phila. Housing Authority v. Am. Radiator & Std. Sanitary Corp.*, 309 F.Supp. 1057 (E.D.Pa.1969). Defendant, Amtrak, argues that it is an instrumentality of the United States Government, and therefore, as a matter of law, cannot be held liable for punitive damages. For the reasons stated herein, this Court finds to the contrary, and grants plaintiffs leave to amend their complaint and seek recovery of a punitive award.[3]

U.S.C. § 1407, from the Southern District of New York to the District of New Jersey for consolidation here, as Multidistrict Litigation (MDL) No. 461, with a number of related actions pending in the Southern District of New York, the Eastern District of Pennsylvania, and in this district, for the purpose of conducting coordinated discovery and pre-trial proceedings. This Court has previously denied, without prejudice, defendant's motion that this case be ordered transferred to the District of New Jersey for all purposes pursuant to 28 U.S.C. § 1404(a). Court Order, December 15, 1981.

2. Although this case is before the Court for limited purposes generally related to discovery, ruling on a motion under Fed.R.Civ.P. 15, is clearly within the jurisdiction of the MDL transferee court. This is true even though the motion involves an important substantive issue.

This Court could not be expected to effectively oversee the course of discovery if it did not also have authority to allow adjustment of the pleadings which establish the parameters of the case and, therefore, define the direction and scope of discovery. The term "pre-trial proceedings" in 28 U.S.C. § 1407 includes motions under Fed.R.Civ.P. 15. The House of Reps. Report on the bill which added § 1407 to Title 28 supports this conclusion.

By the term "pretrial proceedings" the committee has reference to the practice and procedure which precede the trial of an action. These generally involve deposition and discovery, and, of course, are governed by the Federal Rules of Civil Procedure. See, e.g., rule 16 and rules 26–37. Under the Federal rules the transferee district court would have authority to render summary judgment, to control and limit pretrial pro-ceedings, and to impose sanctions for failure to make discovery or comply with pretrial orders.

H.R.Rep.No.1130, 90th Cong., 2d Sess., 4, Reprinted in [1968] U.S.Code Cong. & Ad.News, 1898, 1900.

See also, Humphreys v. Tann, 487 F.2d 666, 667–68 (6th Cir. 1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974); Reidinger v. TWA, Inc., 463 F.2d 1017, 1018 (6th Cir. 1972); In re REA Express, Inc., etc., 412 F.Supp. 1239, 1241 (D.N.J., 1976); Jud.Pan. Multi.Lit.R. 11(a) (Termination and Remand). If the MDL transferee court has jurisdictional authority to terminate a case by summary judgment, it must certainly also have the power to control the pleadings.

3. It is important for this Court to note its concern and expectations regarding the question of what effect, if any, this opinion will have upon this case and those with which it is currently consolidated following remand of these cases to their respective courts of origin—as, for example, in the context of any motion for partial summary judgment on the claims for punitive damages which defendant might later bring based upon the argument rejected here. *Compare, Phila. Housing Authority v. Am. Rad. & Std. Sanitary Corp., supra* at 1064 (denial of leave to amend complaint foreclosed possibility of reconsideration upon motion for summary judgment).

With regard to the instant case, this opinion constitutes the law of the case and should be adhered to upon remand, absent any unusual circumstances which would require reconsideration, such as appellate formulation or legislative creation of a supervening rule of law. As recently noted by the Third Circuit upon apply-

■ Although at least one court has allowed awards of punitive damages against Amtrak, *Hanback v. Seaboard Coastline Railroad & N. R. C. P.*, 396 F.Supp. 80 (D.S.C.1975), and others have indicated that such exemplary awards would be appropriate if proved, *Thompson v. N. R. P. C.*, 621 F.2d 814 (6th Cir.), *cert. denied*, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980); *Cooper v. N. R. P. C., et al.*, 45 Cal.App.3d 389, 119 Cal.Rptr. 541 (1975), none of these courts have squarely and explicitly addressed and rendered an opinion on the issue raised here [4]—i.e., whether Amtrak is an instrumentality of the United States government and therefore insulated from punitive civil judg-

ments.[5] In this instance, the issue is properly before the Court which is not in a position at this early stage in these proceedings to dispose of the claim for a punitive award alternatively on factual grounds.

It is clear that the United States, its agencies and instrumentalities may not be subject to liability for punitive damages without the express consent of Congress. *Missouri Pac. R. R. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921); *Reconstruction Finance Corp. v. State of Texas*, 229 F.2d 9 (5th Cir.), *cert. denied*, 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). The threshold question, then, is whether or not Amtrak is an instrumentality of the United

ing "law of the case" doctrine in the context of a transfer under 28 U.S.C. § 1406(a):

> Adherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court. Here, the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority. [citations omitted.]

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169, (3d Cir. 1982).

With regard to the remaining consolidated cases—the plaintiffs of which are not parties to the instant motion, though counsel for several of these plaintiffs have briefed the issue at the Court's request—any general conclusion as to the effect of such a ruling by a MDL transferee court would perhaps be speculative. However, in this instance defendant would be collaterally estopped from relitigating the identical issue disposed of here. Cf. *Humphreys v. Tann, supra*, at 668–9 (res judicata in the MDL context found inappropriate, but only because the party *against* whom the plea was asserted was not a party to the MDL proceedings).

The important point for MDL transferor courts to note when considering this ruling upon remand is that this Court has devoted such thorough and careful consideration to plaintiff's motion under Fed.R.Civ.P. 15 as would be afforded a motion under Fed.R.Civ.P. 12(c) or for summary judgment by defendant on the issue presented.

4. At the district court level in *Thompson, et al. v. N. R. P. C.*, 621 F.2d 814 (6th Cir.), *cert. denied*, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980), defendant Amtrak moved for summary judgment on plaintiffs' claims for punitive damages, arguing both immunity and factual insufficiency. The motion was denied

without opinion and without prejudice. The case was then tried by the court without a jury, and the District Judge rejected plaintiffs' claims for punitive damages. As the Circuit Court noted, plaintiffs appealed "arguing the evidence does show intentional conduct which requires an award of punitive damages," *id.* at 816. Clearly, both the district court and court of appeals disposed of the claims on the basis of evidentiary insufficiency, and did not reach the issue of Amtrak's claim of immunity, despite some reference to that argument in appellate briefs. Similarly, in *Ford v. Chesapeake & Ohio Railway Co.*, 432 F.Supp. 1285 (W.D.Va. 1977), *rev'd on other grounds*, 590 F.2d 557 (4th Cir. 1979)—not a suit against Amtrak, but brought pursuant to § 307(a) of the Railroad Passenger Service Act, 45 U.S.C. § 547(a)—the court declined to award punitive damages, stating simply, "Nor are punitive damages warranted herein," *id.* at 1289.

In *Hanback v. Seaboard Coastline Railroad*, 396 F.Supp. 80 (D.S.C.1975), where the court assessed a punitive award of $10,000 against Amtrak, the defense to punitive damages that Amtrak is immune was not raised. *Id.*, at 81. The court in *Hanback* did quote from the Act of Congress which created Amtrak (45 U.S.C. § 541 et seq.), but only in its findings of fact relating to jurisdiction. *Id.* at 82.

5. The Court notes that the substantive law of the transferor forum must be applied by the court to which multidistrict litigation has been transferred for coordinated, or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *Stirling v. Chem. Bank*, 382 F.Supp. 1146 (S.D.N.Y.1974), *aff'd*, 516 F.2d 1396 (2d Cir. 1975). However, in this instance what law there is, relevant to the issue *sub judice*, is equally applicable within the Second Circuit as it is here in the Third Circuit.

States government. Only if this first inquiry is resolved in the affirmative does the issue of Congressional consent to punitive liability arise.

Amtrak was created in 1970 under provisions of the Rail Passenger Service Act, § 101 et seq., 45 U.S.C. § 501, et seq. § 541, titled "Establishment of the corporation," provides in full:

> There is authorized to be created a National Railroad Passenger Corporation. *The Corporation shall be a for profit corporation*, the purpose of which shall be to provide intercity rail passenger service, employing innovative operating and marketing concepts so as to fully develop the potential of modern rail service in meeting the Nation's intercity passenger transportation requirements. *The Corporation will not be an agency or establishment of the United States Government.* It shall be subject to the provisions of this chapter and, to the extent consistent with this chapter, to the District of Columbia Business Corporation Act. The right to repeal, alter, or amend this chapter at any time is expressly reserved.

45 U.S.C. § 541 (emphasis supplied). The clear intent of Congress, explicitly stated in § 541, is also reflected in the legislative history. Report No. 81–1580 of the House Interstate & Foreign Commerce Committee twice states: "The corporation would *not* be an agency or establishment [6] of the United States Government," 3 U.S.Code Cong. & Ad.News 4739 and 4742 (1970) (emphasis in original, at 4739). Despite numerous amendments to and extensions of the original Act, Congress has not altered the fundamental character of Amtrak as a nongovernmental entity, specifically a "mixed ownership" corporation (defined at 31 U.S.C. § 856) to be operated for profit under the provisions of the District of Colum-

bia Business Corp. Act, 29 D.C.Code § 901 et seq.

Amtrak has previously sought to arrogate to itself the fiscal protection afforded when an entity is recognized as an instrumentality of the United States government. In *N. R. P. C. v. Miller*, 358 F.Supp. 1321 (D.Kan.) (three judge court), *aff'd*, 414 U.S. 948, 94 S.Ct. 285, 38 L.Ed.2d 205 (1973), Amtrak sought to be relieved of regulation and taxation under Kansas liquor laws. As an essential element of its case, Amtrak argued, as it does here, that it is an instrumentality of the United States. The three judge court flatly rejected this argument, stating that:

> ... [Amtrak] is not a government agency or establishment but is a private corporation operated for profit. The Act under which plaintiff was incorporated so provides. Thus plaintiff's position is *no* different than that of any private corporation organized under federal law....

*Id.*, at 1328. Thus, the unmistakable intent of Congress, and the ruling of this Court in accordance therewith, has gained federal judicial recognition in the past. Amtrak is not a United States government agency, establishment or instrumentality, and therefore may be subject to liability for punitive damages.

That Congress has chosen to leave Amtrak exposed to punitive liability, despite undeniable monetary and managerial dominance of the corporation by the United States,[7] is not surprising or incongruous. Section 546(a) of Title 45 denominates Amtrak to be a "common carrier", and makes it subject to provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq. As noted in *United States v. Marshall*, 230 F.2d 183, 188 (9th Cir. 1956),

---

**6.** During the oral argument of this motion, defendant pointed out that Congress stated that Amtrak would not be an "establishment" of the United States, which arguably left open the possibility that Amtrak is, nonetheless, an "instrumentality" of the government. However, nothing in the legislative history or case law indicates that Congress intended the term "establishment" to be read so narrowly.

**7.** Defendant, as part of its brief, has supplied the Court with an 18 page summary of the legislation creating the NRPC and Amtrak's relationship with the federal government. In addition, defendant has submitted the affidavit of the NRPC's Financial Treasurer, which summarizes Amtrak's funding and its sources.

[T]he Interstate Commerce Act and the regulations thereunder do not fix the sole measure of care chargeable to the appellant Railroad, which is nevertheless under a common law duty to exercise such additional care as is required by the circumstances of the particular case. [citations omitted]. This is a general rule of law ... [which] applies as well against the United States.

Rail carriers have traditionally been held to a high standard of care with respect to the safety of their passengers. *See, e.g., Meyonberg v. Penn. R. Co.*, 165 F.2d 50 (3d Cir. 1948); *Pager v. Penn. R. Co.*, 165 F.2d 56, 56 (2d Cir. 1948). Congress must certainly have decided that the threat of punitive liability would aid the paramount purpose of securing the utmost vigilance by Amtrak in protecting those who commit themselves to its carriage. Regardless of the source from which any punitive damages might ultimately be paid, such liability is calculated to sensitize Amtrak's managers and the corporation's controlling interests, whether they be private or public, to the requirement of maintaining adequate standards of safety. To the extent that the United States Treasury bears the expense of punitive liability for any misdeed by Amtrak, the taxpayers may at least be assured that the Congressional overseers and publically appointed managers of Amtrak will be compelled by fiscal and political pressures to corrective action so as to prevent future injuries.

Congress chose not to make Amtrak a government entity, leaving it exposed to punitive liability, and thereby structuring a disincentive to dangerous misoperation. If Congress wishes to immunize Amtrak from punitive liability, it is free to do so, just as it has relieved Amtrak of the burden of certain state and local taxes. *See*, 45 U.S.C. § 546(h). It is not for this Court to determine, in the face of clear statutory language to the contrary, that federal involvement on behalf of Amtrak has become so extensive as to render it an instrumentality of the United States Government.

Defendant argues strenuously that no statutory indication can be found of the United States government's consent to be exposed to punitive liability. As noted previously, however, the need for such consent only arises with respect to government agencies and instrumentalities, which, it is decided, Amtrak is not. Therefore, it is not surprising that NRPC is not included within the provision of the Federal Tort Claims Act, 28 U.S.C. § 2680, which specifically excepts certain United States' agencies from that Act's protection against punitive tort liability, 28 U.S.C. § 2674, nor that no such consent is provided for within Title 45.

Amtrak is not, as defendant argues, analogous to the Tennessee Valley Authority which, although explicitly excluded from the protection of the Federal Tort Claims Act under 28 U.S.C. § 2680 is, nonetheless, immune from punitive liability, *Fowler v. TVA*, 208 F.Supp. 828, 833 (E.D.Tenn.) *aff'd* 321 F.2d 566 (6th Cir. 1963); *Littleton v. Vitro Corp. of Am.*, 130 F.Supp. 774 (N.D. Ala.1955). This is because the TVA, unlike Amtrak, *is* a governmental agency, *TVA v. Kinzer*, 142 F.2d 833 (6th Cir. 1944), and Congress has not specifically consented to such liability with respect to the TVA. In *Kinzer* and in *Morgan v. TVA*, 115 F.2d 990 (6th Cir. 1940), the Sixth Circuit held that the TVA is an agency of the United States because it exercises administrative functions which prior to its establishment rested with the executive branch of the federal government. The same cannot be said of Amtrak. In addition, Amtrak's funds include substantial private equity capital and, therefore, it is not a "wholly owned" government corporation as are, for example, the TVA and the Reconstruction Finance Corp., *see R. F. C. v. State of Texas, supra*. Thus, even aside from the unambiguous language of 45 U.S.C. § 541, Amtrak cannot be viewed, by analogy to the TVA or other government agencies, as an instrumentality of the United States immune from punitive liability.

Accordingly, plaintiffs' motion for leave to amend their complaint and add a claim for punitive damages is granted. Counsel for plaintiffs will submit an appropriate

562

order within five (5) days of the date of this opinion.