Barry RIDDLE

v.

NATIONAL RAILROAD PASSENGER CORPORATION.

Civ. A. No. 93–CV–2028.

United States District Court,
E.D. Pennsylvania.

Aug. 6, 1993.

Robert A. Kosseff, Traubman, Chaiken & Kosseff, Philadelphia, PA, for plaintiff.

Paul F.X. Gallagher, Wilfred T. Mills, Jr., Gallagher, Reilly and Lachat, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The defendant, National Railroad Passenger Corporation, has filed a motion to dismiss the instant personal injury action pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons outlined in the following paragraphs, the motion is denied.

## I. STATEMENT OF FACTS.

On April 16, 1993, Plaintiff filed his civil action complaint in this case pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq., alleging that he was, at all relevant times, employed as a maintenance manager by the National Railroad Passenger Corporation ("Amtrak") working out of Amtrak's 30th Street Station in Philadelphia. Mr. Riddle's complaint further avers that "[b]eginning on or about June, 1989 and continuing at least until September, 1992, defendant has engaged in [certain] .... negligent and unlawful conduct which amounts to the negligent infliction of emotional distress and harassment of plaintiff which directly and proximately caused plaintiff's injuries ..."

This was not, however, the first action filed by Mr. Riddle for the emotional injuries which he purportedly suffered at the hands of his employer. Rather, it appears that Mr. Riddle had filed a nearly identical claim with this Court on May 29, 1992 and that that action had been transferred by stipulation of the parties to the United States District Court for the District of Columbia on July 28, 1992. Thereafter, on January 13, 1993, no action having been taken in that case

since its transfer, Judge Louis F. Oberdorfer of the U.S. District Court for the District of Columbia ordered that counsel for plaintiff enter an appearance no later than January 29, 1993 in accordance with that court's local rules or show cause why the action should not be dismissed for want of prosecution. Plaintiff's counsel failed to comply with this order and, on February 2, 1993, the defendant filed a 12(b)(6) motion to dismiss the action with the D.C. court. Plaintiff likewise failed to respond to this motion with the result that on March 22, 1993, Judge Oberdorfer entered an order treating the defendant's motion to dismiss as "conceded under Local Rule 108(b)" and dismissing the action pursuant to Rule 12(b)(6).

## II. DISCUSSION.

### A. Standards Governing Motions to Dismiss

It has long been recognized that a Fed.R.Civ.P. 12(b)(6) motion is the appropriate method by which to challenge the legal sufficiency of a claim or pleading filed in the district courts. See: United States v. Marisol, Inc., 725 F.Supp. 833 (M.D.Pa.1989). In ruling upon a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3rd Cir.1990). In so reviewing the pleadings and any materials of record, the court must accept as true all of the matters pleaded and all reasonable inferences that can be drawn therefrom, construing them in the light most favorable to the non-moving party. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3rd Cir. 1990); Hough/Loew Assoc., Inc., v. CLX Realty Co., 760 F.Supp. 1141, 1142 (E.D.Pa. 1991); Ambrogi v. Gould, Inc., 750 F.Supp. 1233, 1241 (M.D.Pa.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80

(1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988).

### B. Applicability of the Doctrine of Res Judicata.

■ By way of the motion to dismiss which is now pending before this court, the defendant first asserts that under the doctrine of *res judicata* Plaintiff is effectively barred from bringing and maintaining this action by virtue of Judge Oberdorfer's March 22, 1993 order.

It has long been recognized that *res judicata* is a doctrine of claim preclusion; it refers to "the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." Claim preclusion "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.1986) quoting *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) and *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir.1984). For the defense of *res judicata* to succeed, four elements must be found to coalesce: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies. *O'Dell v. McSpadden*, 780 F.Supp. 639, 643 (E.D.Mo. 1991); *Kellner v. Aetna Casualty & Surety Co.*, 605 F.Supp. 326, 330 (M.D.Pa.1984). *See Also: Recchion on Behalf of Westinghouse Electric Corp. v. Kirby*, 637 F.Supp. 284, 286 (W.D.Pa.1985); *Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 585 F.Supp. 770, 775 (E.D.Pa.1984).

While the determination of whether an initial suit was based upon proper jurisdictional grounds and involved the same cause of action and parties as the subsequent action is relatively simple, resolution of the question of whether the first action resulted in a final determination on the merits is somewhat more problematic. For example, Fed. R.Civ.P. 41(b) provides that as a general rule, a dismissal with prejudice operates as a judgment on the merits unless the court specifies otherwise. That rule further authorizes a district court to dismiss an action for failure to prosecute, or to comply with [the] rules or any order of court and states that unless the court otherwise specifies, dismissal on these grounds, too, operates as an adjudication upon the merits. *See: Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1087 (3rd Cir.1988); *Kimmel v. Texas Commerce Bank*, 817 F.2d 39, 40 (7th Cir.1987); *Hart v. Yamaha, supra.*, at 1470; Fed.R.Civ.P. 41(b).

■ Giving the dismissal this effect requires caution, however, if it is a penalty for want of prosecution or for failure to comply with the rules or with court orders. Indeed, there are constitutional limitations upon the power of a court, even in aid of its own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause and it is for this reason that the appellate courts very carefully scrutinize dismissals with prejudice made on these grounds and have allowed dismissal with prejudice only in the face of a clear record of delay or contumacious conduct by the plaintiff or upon a serious showing of willful default. 9 Wright & Miller, *Federal Practice and Procedure: Civil*, § 2369 at 193–195 (1971). To be sure, it is the law of this circuit that Rule 41(b) dismissals should be reserved for cases where there is a clear record of delay or contumacious conduct by the plaintiff and it is necessary for the district courts to consider whether lesser sanctions would better serve the ends of justice. *Pickel v. United States*, 746 F.2d 176, 182 (3rd Cir.1984).

Viewing the case at bar in the context of all of the foregoing, we initially observe that the plaintiff does not challenge the District of Columbia Court's jurisdiction in the preceding action nor is there any dispute but that the parties and the causes of action are the same in both cases. Thus, the sole issue facing this court now is whether Judge Oberdorfer's March 22, 1993 order granting Amtrak's motion to dismiss constitutes a final judgment on the merits within the meaning of the *res judicata* doctrine. Although the

order is silent as to whether or not the dismissal was with prejudice, its rationale is plainly apparent from the opening paragraph. Specifically, Judge Oberdorfer there opined:

"A January 13, 1993 Order in this matter stated that counsel for plaintiff 'shall, on or before *January 29, 1993*, enter an appearance in accordance with Local Rule 201(a) or otherwise show cause why this action should not be dismissed for want of prosecution.' Counsel for plaintiff has neither entered an appearance nor otherwise responded to that Order. Meanwhile, defendant has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has not responded to defendant's motion, and the time within which he may respond has expired. Defendant's motion to dismiss may therefore be treated as conceded under Local Rule 108(b) ..."

From this language, we conclude that Judge Oberdorfer based his decision to dismiss the previous action not upon its merits but upon the plaintiff's failure to prosecute, to comply with his January 13, 1993 order and to respond in a timely fashion to the defendant's dismissal motion. However, in now evaluating the existing record in this matter, we cannot find that there is such a clear record of delay or contumacious conduct on the part of the plaintiff as would merit here denying the plaintiff the opportunity to have his case heard on the merits. Indeed, while it is true that some two months elapsed between the time that Judge Oberdorfer ordered plaintiff's counsel to enter his appearance and the eventual dismissal of his case, less than four weeks passed between the dismissal and plaintiff's refiling of his claim in this court. Although we are in no way sanctioning the dilatory behavior of Mr. Riddle's attorney, we cannot say that justice would be served by giving the D.C. Court's March 22, 1993 order the effect of *res judicata.* The defendant's motion to dismiss on this basis is therefore denied. *See Also: Anchorage Associates v. Virgin Islands Board of Tax Review,* 922 F.2d 168, 174–175 (3rd Cir.1990).

C. *Application of the Doctrine of Official Immunity.*

Defendant next argues that plaintiff cannot maintain the instant cause of action against it by virtue of the fact that it is cloaked with official immunity from suit. Specifically, Amtrak contends that because the Inspector General Act, 5 U.S.C.App. was amended in 1988 to require it to establish an Office of the Inspector General within 180 days and because the underlying conduct of which Mr. Riddle complains was allegedly undertaken by the Inspector General in fulfilling its statutory responsibility under the Act to conduct independent investigations, Amtrak was thereby rendered a governmental entity subject to the protections of immunity from suit. Again, we disagree.

It has long been thought important that officials of government should be free to exercise their official duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties and it is as a result of this thinking that immunities from suit, both absolute and qualified, were statutorily and judicially created. *See: Barr v. Matteo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959). In this case, the statute under which Amtrak essentially exists, 45 U.S.C. § 541, provides, in relevant part:

§ 541. **Establishment of the Corporation**

There is authorized to be created a National Railroad Passenger Corporation. The Corporation shall be operated and managed as a for profit corporation, the purpose of which shall be to provide intercity and commuter rail passenger service, employing innovative operating and marketing concepts so as to fully develop the potential of modern rail service in meeting the Nation's intercity and commuter passenger transportation requirements. *The Corporation will not be an agency, instrumentality, authority or entity or establishment of the United States Government.* It shall be subject to the provisions of this chapter and, to the extent consistent with this chapter, to the District of Columbia Business Corporation Act ... (emphasis supplied)

Although the question of whether Amtrak is a governmental entity for constitutional and/or other purposes has been extensively litigated and conflicting decisions rendered, those conflicting rulings have nevertheless been premised upon the particular facts involved in each case. *See, Anderson v. National Railroad Passenger Corp.,* 754 F.2d 202, 205 (7th Cir.1984); *Lebron v. National Railroad Passenger Corp.,* 811 F.Supp. 993, 998–999 (S.D.N.Y.1993) and the cases cited therein.

Similarly, while there is a modicum of caselaw dealing with the question of whether Amtrak is an entity of the government for purposes of immunity, we find the rationale of the New Jersey District Court in *Sentner v. Amtrak,* 540 F.Supp. 557 (D.N.J.1982) to be both well-reasoned and persuasive. In that case, the plaintiffs filed a motion to amend their complaint to include a claim for punitive damages as the result of their discovery of evidence of gross, wanton and reckless negligence on the part of Amtrak in causing the passenger train collision in which they were injured. In opposing the plaintiffs' motion, Amtrak argued that, like the Tennessee Valley Authority, it was an instrumentality of the United States Government and therefore could not be held liable as a matter of law for punitive damages. The district court looked to both the language and legislative history of § 541 of the Rail Passenger Service Act in rejecting this argument and noted that:

> Thus, the unmistakable intent of Congress, and the ruling of this Court in accordance therewith, has gained federal judicial recognition in the past. Amtrak is not a United States government agency, establishment or instrumentality, and therefore may be subject to liability for punitive damages.

540 F.Supp. at 560. The *Sentner* court then went on to observe:

> Congress chose not to make Amtrak a government entity, leaving it exposed to punitive liability, and thereby structuring a disincentive to dangerous misoperation. If Congress wishes to immunize Amtrak from punitive liability, it is free to do so, just as it has relieved Amtrak of the burden of

state and local taxes. *See, 45 U.S.C. § 546(h).* It is not for this Court to determine, in the face of clear statutory language to the contrary, that federal involvement on behalf of Amtrak has become so extensive as to render it an instrumentality of the United States Government.

*Id.,* at 561. *See Also: In re Rail Collision Near Chase, MD,* 680 F.Supp. 728, 730, n. 2 (D.Md.1987); *Icenogle v. Olympic Airways, S.A.,* 82 F.R.D. 36, 41, n. 12 (D.D.C.1979).

In light of all of the foregoing, we likewise find defendant's attempt to bootstrap the expansion of the Inspector General Act, 5 U.S.C.App. § 8E, *et seq.* to include Amtrak so as to render it qualifiedly immune from suit to be unpersuasive. To reiterate, in ruling upon a motion to dismiss we are obligated to read the pleadings and record in the light most favorable to the plaintiff, as the non-moving party. Thus, regardless of defendant's averment that the complained-of behavior was conducted by the duly-appointed inspector general, that allegation is not substantiated in the record of this case and the allegations of the complaint must therefore be given credence. Moreover, while we are aware that the plaintiff in the instant case seeks to hold the defendant liable for compensatory damages under an ordinary negligence theory rather than for punitive damages as the result of reckless, wanton and/or gross negligence, we are nevertheless hard-pressed to distinguish this matter from *Sentner.* Accordingly, we hereby adopt the reasoning of the *Sentner* Court and hold that the defendant is not immune from this suit under the doctrine of qualified immunity. The motion to dismiss on the basis of qualified immunity is therefore denied.

D. *Demurrer to Plaintiff's Claim for Negligent Infliction of Emotional Distress.*

■ Defendant finally argues that the plaintiff's complaint must be dismissed because it fails to state a claim for negligent infliction of emotional distress for which relief can be granted under the Federal Employers' Liability Act or "FELA", 45 U.S.C. § 51. In this regard, Defendant's argument is two-fold: (1) that Plaintiff cannot bring an

action for negligent infliction under FELA absent a showing of physical contact or that he was within the zone of danger of physical contact; and (2) that Plaintiff's claim must fail because he has failed to allege any negligence on the part of Amtrak.

■ It is well-settled that while the FELA[1] does not make an employer an insurer of an employee's safety, an employer is liable under the Act for injury to its employees caused in whole or in part by its negligence. *Bloom v. Consolidated Rail Corp.*, 812 F.Supp. 553, 556 (E.D.Pa.1993) citing, *inter alia, Inman v. Baltimore & O.R. Co.*, 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959) and *Pehowic v. Erie L.R. Co.*, 430 F.2d 697, 699 (3rd Cir.1970). Unlike state worker's compensation laws then, the basis of an employer's liability under FELA is its negligence rather than the mere fact that injuries occur. What's more, since negligence requires a breach of duty, an employer has the duty under FELA to provide its employees with a reasonably safe workplace. *Id.* citing *Shenker v. Baltimore & O.R. Co.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963) and *Ellis v. Union P.R. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947). However, the question of the type of injuries for which recovery may be had under FELA is less than clear.

Since at least 1987 when the United States Supreme Court decision in *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) left open the possibility that claims for emotional injury were cognizable under FELA, the Circuit Courts of Appeals have been forced to formulate on a piecemeal basis what will constitute the governing federal common law and what elements must be pleaded and proven to maintain such a cause of action. Not surprisingly, the Circuits are divided as to what shall constitute a cause of action under FELA for emotional injury and the level of proof that is necessary to sustain such a claim. *See, e.g., Ray v. Consolidated Rail Corp.*, 938 F.2d 704 (7th Cir.1991); *Elliott v. Norfolk & W. Railway Co.*, 910 F.2d 1224 (4th Cir.1990); *Adams v. CSX Transportation, Inc.*, 899 F.2d 536 (6th Cir.1990); *Stoklosa v. Consolidated Rail Corp.*, 864 F.2d 425 (6th Cir.1988); *Netto v. Amtrak*, 863 F.2d 1210 (5th Cir.1989); *Moody v. Maine Central Railway Co.*, 823 F.2d 693 (1st Cir. 1987). It should be noted, however, that this disparity is also in keeping with the Supreme Court's reasoning in *Buell* inasmuch as the Court itself observed that "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." 480 U.S. at 568, 107 S.Ct. at 1416.

Although the Third Circuit for some time successfully avoided the question expressly left open by the Supreme Court in *Buell*, that is, whether physical contact, physical injury, or the immediate threat of physical contact is a required element for a negligent infliction of emotional distress claim under FELA, [*See: Outten v. National Railroad Passenger Corp.*, 928 F.2d 74 (3rd Cir.1991); *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421 (3rd Cir.1990) *cert. denied*, 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991); *Carlisle v. Consolidated Rail Corp.*, 790 F.Supp. 521, 523 (E.D.Pa.1992) ] it recently

---

1. Specifically, 45 U.S.C. § 51 provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in commerce and shall be considered as entitled to the benefits of this chapter."

addressed the issue directly. While continuing to eschew the adoption of a bright-line common law test in favor of a fact-specific, totality of the circumstances analysis, the Third Circuit in *Gottshall v. Consolidated Rail Corp.*, 988 F.2d 355 (3rd Cir.1993) held:

"When an employer breaches a duty of care to provide a safe workplace, it is liable under FELA if an employee suffers an injury, physical or emotional, causally related to its negligence." *Id.* at 380–381.

The *Gottshall* court then went on to state:

"Before we conclude, it is important that we spell out what we are not holding. We are not holding that a railroad breaches a duty of care when it works its men in hot weather. We are not holding that an employer must refrain from pushing its men to do hard labor. We are not holding that every employee who suffers emotional injuries as a result of the railway employer's conduct has a valid FELA claim. We are not holding that every bystander to an accident has a valid FELA claim. We are not even holding that every bystander who sees a close friend injured or killed has a valid FELA claim.

We simply hold that considering the totality of these extreme facts in the light most favorable to Gottshall—that is, seeing and actively participating in the events surrounding the death of a friend of fifteen years as a result of Conrail's actions, which includes working men under extreme conditions without taking the precautions arguably required, being forced to stay at the worksite by Conrail for several hours, being forced to be subjected to the same physical force after the accident without the benefits of the precautions arguably required, checking into a mental hospital for three weeks, losing forty pounds, exhibiting other physical manifestations of severe emotional injury, being diagnosed by three doctors as suffering from severe post-traumatic stress syndrome—Gottshall's claim has sufficient indicia of genuineness and he presents genuine issues of whether there is a breach of duty, injury and causation." 988 F.2d at 382–383.

Some two months later, the Third Circuit was again faced with a claim for emotional damages under the FELA in *Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90 (3rd Cir. 1993). In that case, the plaintiff, a former Conrail dispatcher and troubleshooter complained that as a result of being overworked and burdened with excessive responsibility and an abusive, alcoholic supervisor, he suffered insomnia, headaches, fatigue, depression, sleepwalking and substantial weight loss which eventually disabled him from returning to his job at the South Philadelphia yards. Carlisle introduced evidence that his emotional and physical injuries were a foreseeable result of his working conditions, which evidence was admitted over the defendant's objection and the jury eventually returned a judgment in plaintiff's favor. In upholding the trial court's denial of defendant's post-trial motions, the Court of Appeals squarely faced the issue of whether protracted exposure to work-related, stressfully injurious conditions could lead to FELA liability and held that where the injurious result was reasonably foreseeable, liability under the Act could indeed attach. Although the *Carlisle* court did not decide whether purely emotional injury, unaccompanied by physical manifestations, caused by stressful, dangerous working conditions would be compensable under the FELA, it reiterated:

"We reaffirm our holding in *Gottshall* that this Court adopts no single common law standard for weighing the genuineness of emotional injury claims. Rather, courts of this circuit should engage in an initial review of the factual indicia of the genuineness of a claim, taking into account broadly used common law standards, then should apply the traditional negligence elements of duty, foreseeability, breach and causation in weighing the merits of that claim."

990 F.2d at 98.

Applying all of the aforementioned principles to the Rule 12(b)(6) motion presently pending before the court, we note that the plaintiff alleges the following elements in his complaint: (1) that under FELA the defendant has a duty to provide its employees with safe working conditions; (2) that the defendant acted at all material times through its agents, servants, workmen and employees; (3) that defendant created an unsafe and

hostile work environment for plaintiff by conducting a sustained and intentional campaign of investigations and harassment of plaintiff; (4) that the creation of this type of a work environment constituted negligence on the defendant's part; (5) that plaintiff's injuries resulted from defendant's negligence; and (6) that those injuries were a foreseeable result of defendant's conduct. In view of the liberal pleading standards under the Federal Rules of Civil Procedure and the undeveloped state of the record at this point, we conclude that *Gottshall* and *Carlisle* require that the plaintiff be given the opportunity to develop a factual record in support of the foregoing allegations. For all of the foregoing reasons, the defendant's motion to dismiss is denied pursuant to the following order.

### ORDER

AND NOW, this 6th day of August, 1993, upon consideration of the Motion of the Defendant National Railroad Passenger Corporation to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), it is hereby ORDERED that the said Motion is DENIED.