**Charles KIMBROUGH, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak, a corporation; and Kathleen Pruett, an individual, Defendants.**

**Civ. A. No. 81–625–N.**

United States District Court, M.D. Alabama, N.D.

Sept. 28, 1982.

---

Charles Price, Montgomery, Ala., for plaintiff.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, Sydney F. Frazier, Birmingham, Ala., and Theodore M. Kerrine, Washington, D.C., for defendant Amtrak.

No appearance for Pruett.

## MEMORANDUM OPINION

HOBBS, District Judge.

This cause is now before the Court on defendant National Railroad Passenger Corporation's motion to dismiss, submitted for decision on April 16, 1982. In his complaint plaintiff asserts that the process by which he was fired as a dining car employee by the National Railroad Passenger Corporation (Amtrak) violated his rights to Fifth and Fourteenth Amendment due process. Defendant Amtrak asserts that it is neither a federal nor state agency; therefore, it is not bound by the Constitutional requirements for due process in either the Fifth or the Fourteenth Amendments. Moreover, defendant Amtrak asserts that the only proper review of the Amtrak decision was by the Public Law Board convened pursuant to the Railway Labor Act, 45 U.S.C. § 153 (1972), and the allowable judicial review of that decision does not permit the Court to consider the issues raised by plaintiff.

In order to reach a decision in this case it is necessary to set out the factual and statutory framework out of which the case arose. Plaintiff, previously employed by Seaboard Coast Line since December 17, 1960 and employed by Amtrak since March 16, 1974, was discharged by Amtrak on September 9, 1977 after a hearing on the charge that on May 27, 1977, he had approached a lounge car passenger, Mrs. Pruett, and used suggestive and offensive language in conversation with her. The only evidence presented at the hearing to identify the person who had spoken to Mrs. Pruett was contained in an affidavit signed by her. In the affidavit, dated two months after the incident, Mrs. Pruett states that she recognized plaintiff as the "porter" who

talked to her from one of four photographs presented to her. There was never a live confrontation or meeting between Mrs. Pruett and plaintiff Kimbrough. Thus, the only evidence of identification was Mrs. Pruett's affidavit stating that she recognized plaintiff from a picture of plaintiff she selected from photographs provided for her inspection.

After an investigatory hearing Amtrak dismissed plaintiff Kimbrough. Pursuant to the collective bargaining agreement between the Dining Car Employees Union and Amtrak, plaintiff appealed the dismissal decision to a Public Law Board set up pursuant to the Railway Labor Act, 45 U.S.C. § 153 First (q) (1972). The Board consisted of a neutral member, a representative of Amtrak, and a representative of the Union. On August 8, 1980, the Board affirmed the dismissal, solely on the basis of the affidavit of the passenger, Mrs. Pruett. The Board noted that hearings before an investigatory officer did not have to comply with court rules of procedure or evidence. It also noted that passengers could not be subpoenaed or otherwise compelled to attend hearings which often took place at great distances from the residences of such witnesses; therefore, the Board found the affidavit sufficient evidence to meet the requirement of Rule T of the existing collective bargaining agreement for a "fair and impartial hearing" on the issue of dismissal. The decision of the Board was unanimous. Plaintiff filed this action in this Court on November 9, 1981.

By letter dated February 17, 1982, the Court requested that counsel for Amtrak file a memorandum setting out the statutory and contractual scheme under which Mrs. Pruett's complaint was processed and Mr. Kimbrough's dismissal was issued and affirmed. In its brief, setting out the statutory framework, defendant noted that judicial review of the Board decision is limited to cases where the Board failed to comply with the requirements of the Act, failed to conform or confine its order to matters within the Board's jurisdiction, or where there are allegations of fraud or corruption by a member of the Board making the order. 45 U.S.C. § 153 First (q). Defendant argues that the Board's order in this case does not fall into any of these restrictive areas for review.

The Court is not sure that the Board's decision is before the Court. Plaintiff's complaint attacks the actions of Amtrak but does not expressly petition the Court for a review of the Board decision. A copy of the Board decision was filed by the defendant Union, not by plaintiff, and no party has requested that the Clerk of this Court file a copy of the complaint with the Board as apparently required by the Railway Labor Act, 45 U.S.C. § 153 First (q). However, a discussion of the scope of review of Board decisions has bearing on the issue of whether Amtrak should be considered a governmental or private entity.

## SCOPE OF JUDICIAL REVIEW OF BOARD DETERMINATION

Prior to 1971 a railroad employee who was a member of a union with an agreement covered by the Railway Labor Act had two routes by which to challenge a firing decision. First, he could ask for a Public Law Board Review seeking reinstatement and back pay. Second, he could accept the decision as final and sue in the applicable state court for wrongful discharge. This second practice ended when the Supreme Court in *Andrews v. Louisville & Nashville Railway,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1971), held that the procedure for review by the Public Law Board set up by the Railway Labor Act is compulsory and that an employee cannot seek an independent judicial proceeding on the merits of the firing decision. In reaching this holding the Supreme Court noted that the employee's only right not to be discharged at will arose out of the collective bargaining agreement.

Thus, the only available judicial review of an Adjustment Board order is pursuant to 45 U.S.C. § 153 First (q). This review allows a Board decision to be set aside only if: (1) the Board failed to act in accordance with the Act; (2) the order was not in conformance with the Board's jurisdiction; or (3) there was fraud or corruption on the part of a member of the Board.

In 1978, the Supreme Court reversed a decision of the Court of Appeals for the Tenth Circuit which had ordered the district court to grant judicial review of a Board decision. *Union Pacific Railway v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). In *Sheehan*, the Supreme Court stated:

> The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153 First (q) unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties" and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says. *Id.* at 93, 99 S.Ct. at 402.

The Court in *Sheehan* emphasized Congressional intent to provide a tribunal composed of worker and management representatives to secure "the prompt, orderly and final settlement of grievances." The Court stated that the effectiveness of the Board in fulfilling this task "depends on the finality of its determinations," which finality the Court noted is normally in the interest of the employee who is spared expensive and time-consuming appeals.

■ At least one circuit court has indicated that this decision abolishes the review of Board decisions on due process grounds. *United Steelworkers of America v. Union Railroad*, 648 F.2d 905, 911–912 (3d Cir. 1981). Prior to the Supreme Court decision in *Sheehan*, the Court of Appeals for the Seventh Circuit was presented with a decision by the Board based on hearsay evidence strikingly similar to the evidence relied upon by the Board to sustain the decision of Amtrak to discharge plaintiff Kimb-

rough. *Edwards v. St. Louis, San Francisco Railroad*, 361 F.2d 946 (7th Cir. 1966). The *Edwards* court reluctantly held that it had no grounds to set aside the Board order affirming a discharge decision even though the only evidence submitted to the Board in support of the discharge was hearsay testimony. 361 F.2d at 952. In *Edwards*, the Board had found that there was no contractual right to demand that the railroad produce the complaining witness. Although the Court of Appeals noted that it was "hard to imagine a situation in which a carrier could act with greater distrust of a veteran employee or greater disdain for the conventional notions of fair play and still meet its obligations under the collective bargaining agreement," it found that it did not have the power to set aside the Board's decision under the allowable due process review. 361 F.2d at 952. This Court is confronted with a case showing a remarkably similar disdain of conventional notions of fair play, but it too is forced to conclude that the Act does not permit judicial review of the Board decision on the ground that the evidence at the hearing was insufficient to such a degree as to contravene due process.[1]

## NATURE OF AMTRAK AS A CORPORATE ENTITY

[3] The fact that the review of a private railway carrier's decision to dismiss an employee is restricted to a submission to the Public Law Board with only limited opportunity for judicial review is a factor which the Court must consider in determining whether Fifth Amendment due process requirements apply to Amtrak. As a federal corporation set up by an act of Congress, Amtrak is an unusual entity. Although Congress has stated that Amtrak is not a federal agency or establishment, 45 U.S.C. § 541, there is strong initial and continuing federal involvement in its actions. The

---

1. Plaintiff in his brief also states that he is contesting the decision on the basis of fraud because the photographs used in the identification were obtained by subterfuge and the affidavit signed by Mrs. Pruett was prepared by the carrier's security officer. These actions were taken by the carrier, not by the Board, and the review lies only for fraud and corrup-

tion of a Board member. Moreover, the Court finds nothing fraudulent in submitting a photograph of plaintiff to a complaining witness even if the photograph was obtained by subterfuge. The Court does not find any ground for reversing the Board because a railroad security officer prepared the affidavit signed by Mrs. Pruett.

President, with the advice and consent of the Senate, appointed the incorporators and had approval authority over the articles of incorporation. 45 U.S.C. § 542. Prior to the 1981 amendments, eight of the seventeen board members were appointed by the President with the advice and consent of the Senate, and in addition, the Secretary of Transportation must always be a board member. 45 U.S.C. § 543 (Supp.1981). Thus, the federal government appoints a majority of the board. Congress determined the number of board members, the class of stock entitled to elect each member, the classes of stock, who may be issued stock, par value of the stock, and the maximum rate of compensation of officers. 45 U.S.C. §§ 543, 544. Amtrak is subject to the provisions of 5 U.S.C. § 552, the Freedom of Information Act. 45 U.S.C. § 546. Finally, monthly reports to Congress on finance and operation are required of Amtrak and a yearly report to Congress and the President is required. 45 U.S.C. § 548.

*Hines v. Cenla Community Action Committee, Inc.,* 474 F.2d 1052 (5th Cir. 1973) held that a community action committee was not a federal entity for purposes of the Fifth Amendment. The committee received federal funds and carried out programs pursuant to the Economic Opportunity Act of 1964. However, it had funding from other sources. The federal contracts with the committee required controls as to reporting and audits. The court noted, however, that the government did not have the right to direct the manner in which the program was carried out or to select employees of the committee. The Fifth Circuit held that the Community Action Committee was a private employer. The Sixth Circuit also held that community action agencies are not federal entities. *Griffith v. Bell-Whitley Comm. Action Agcy.,* 614 F.2d 1102 (6th Cir.), *cert. den.,* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). Despite the financial controls exerted by the federal government, it is clear that Amtrak was chartered as a for-profit corporation and is to be operated and managed as such. It is governed not only by the Rail Passenger Service Act of 1970, as amended, but to the extent it is not inconsistent with the Act Amtrak is governed by the District of Columbia Business Corporation Act. 45 U.S.C. § 541 (1972, Supp.1982). This indicates that Amtrak is to be considered a private corporation rather than a federal government entity.

■ The opinion that Amtrak is a private corporation is reinforced when one looks at the provisions for employees under the Act. In the context of the status of employees of Amtrak it appears that Congress intended Amtrak employees to be treated the same as employees of any other railroad. They are not part of the Civil Service system as are employees of other government agencies. Moreover, 45 U.S.C. § 546(b) provides:

> The Corporation shall be subject to the same laws and regulations with respect to the representation of its employees for purposes of collective bargaining, the handling of disputes between carriers and their employees, employee retirement, annuity and unemployment systems, and other dealings with its employees as any other common carrier subject to Part I of the Interstate Commerce Act.

Part I common carriers are those engaged in the transportation of persons or property by railroad. 4 U.S.C. § 1 (Supp.1982). Finally, Amtrak relied on the individual railroads to provide employees necessary to the operation of the passenger trains to the extent the railroads were capable of providing such service and when Amtrak contracted to take over a railroad's passenger service, the Act provided that there be protective arrangements for the employees. 45 U.S.C. § 561(a)(1). These provisions lead this Court to the conclusion that Amtrak was to be treated as a private, for-profit railroad in regard to its employee relations.

A separate order will be entered in accordance with this opinion.

### ORDER

In accordance with the memorandum opinion entered this date, it is

ORDERED that defendant National Railroad Passenger Corporation's motion to dismiss, filed herein December 11, 1981, be and is hereby granted.

It is further ORDERED that plaintiff's complaint be and is hereby dismissed as to defendant National Railroad Passenger Corporation.

The Court notes that the summons and complaint which plaintiff sought to serve on defendant Pruett by certified mail was returned undelivered to the Clerk of this Court on November 18, 1981. The record shows that plaintiff has failed to perfect service on said defendant or otherwise prosecute his claim against this defendant. Accordingly, it is further ORDERED that plaintiff's complaint as to defendant Pruett is hereby dismissed for failure to prosecute, pursuant to Rule 41(b), Federal Rules of Civil Procedure.