**In re Governor–Elect Bruce G. SUNDLUN.**

**No. 90–592–M.P.**

Supreme Court of Rhode Island.

Feb. 4, 1991.

Sheldon Whitehouse, Legal Counsel, Office of the Governor, for plaintiff.

To His Excellency Bruce G. Sundlun, Governor of the State of Rhode Island and Providence Plantations.

In fulfillment of our constitutional obligations to advise you on questions of law that relate to your official duties as the head of a coordinate branch of government, the undersigned forward this communication to you as a reply to your recent inquiry whether your current membership on the board of directors of the Communications Satellite Corporation (COMSAT) constitutes the holding of an "office under the government of the United States" within the meaning of article III, section 6, of the Rhode Island Constitution.

In making this inquiry, Your Excellency appears to have in mind the response given by our predecessors in 1955 to the then-Governor Dennis J. Roberts, who had requested the then-members of this court to determine whether his acceptance of an appointment by President Dwight D. Eisenhower as a special representative of the United States to the tenth session of the General Assembly of the United Nations would constitute a violation of the provisions of article IX, section 6, of Rhode Island's Constitution that would require him to vacate his office as Governor. The justices' affirmative response to the Governor's inquiry involved an application of article IX, section 6, of the State's Constitution that, in its pertinent part, stated:

> "No person holding any office under the government of the United States, or of any other state or country, shall act as a general officer, or as a member of the general assembly, unless at the time of taking his engagement he shall have resigned his office under such government."

The justices emphasized that the intent of this constitutional prohibition was clear. It was, in their opinion, designed to secure the undivided loyalty and service of the State's general officers and legislators. In 1955 the justices pointed out that the concern of the framers of the Rhode Island Constitution was evidenced when they dealt with the possibility of a conflict between loyalties in two ways. The framers provided that (1) no person while "holding any office under the government of the United States, or of any other state or country, shall act as a general officer, or as a member of the general assembly, unless at the time of taking his engagement he shall have resigned his office under such

government" and (2) "if any general officer, senator, representative or judge shall, after his election and engagement, accept any appointment under any other government, his office under this shall be immediately vacated."

At the 1986 Constitutional Convention, the delegates incorporated the prohibitions that were part of article IX, section 6, of the State Constitution. Today this prohibition can be found in article III, section 6, of our 1986 Constitution. The sole modification made at the 1986 Constitutional Convention was the replacement of references to gender with gender-neutral language. Today, in its pertinent portion, article III, section 6, of the Rhode Island Constitution reads as follows: "No person holding any office under the government of the United States * * * shall act as a general officer * * * unless at the time of taking such engagement that person shall have resigned the office under such government." The sanction for holding such a federal office while serving as a state general officer is that the state office "shall be immediately vacated."

■ The test for what constitutes an "office under the government of the United States" is whether the incumbent is entitled by the office "to exercise a portion of the sovereignty of the United States government." *Opinion to the Governor,* 83 R.I. 370, 375, 116 A.2d 474, 476 (1955). It is enough that the incumbent participate or share in the exercise of federal sovereignty. *Id.* at 381, 116 A.2d at 479. The justices in 1955 described the purpose of this provision as an ability "to secure the undivided loyalty and service" of the Governor. *Id.* at 373, 116 A.2d at 475.

In considering Governor Roberts's inquiry, the justices noted that "the essential question is always to be resolved by a consideration of the nature, duties and functions of the position in order to determine whether they entitle the incumbent to exercise some portion of the sovereignty of another government." *Id.* at 374, 116 A.2d at 475; *Attorney General ex rel. Adams v. McCaughey,* 21 R.I. 341, 344, 43 A. 646, 648 (1899) (quoting Spelling, *Extraordinary Relief,* § 1780).

■ The duties of a COMSAT director are not to the community in its political capacity but rather to COMSAT itself. In this respect, a directorship of COMSAT is no different from the directorship of any other large publicly held corporation.

In resolving the issue presented by Governor Sundlun, we first refer to *TRT Telecommunications Corp. v. F.C.C.,* 876 F.2d 134, 136 (D.C.Cir.1989), where the United States District Court for the District of Columbia described the Communications Satellite Act of 1962 as the embodiment of Congress's policy goals on the establishment of an international satellite system that would serve the communications needs of the United States and contribute to world peace and understanding.

At this point we would acknowledge receipt of an affidavit submitted by Willard R. Nichols, COMSAT's vice president and general counsel. Counsel's affidavit indicates that COMSAT is a private corporation incorporated pursuant to the laws of the District of Columbia and having its headquarters located in the District.

The affidavit further emphasized that COMSAT is neither an agency of the United States nor an establishment of the United States government. The corporation does not receive any appropriation of federal funds. The common stock of COMSAT is traded publicly on the New York Stock Exchange. Mr. Nichols informs us that Governor Sundlun has been the senior member of COMSAT's board of directors, having served without interruption since his initial appointment by President John F. Kennedy. The Governor was elected to his current term on the board in mid-May 1990 by a vote of the corporation's stockholders. He does not occupy any of the seats filled by presidential appointment. Mr. Nichols also avers that COMSAT does no business with the State of Rhode Island, nor has it been engaged in any significant business activities within this state. The corporation does, however, provide pay television to a hotel located in this state.

Counsel for COMSAT has submitted a copy of an advisory opinion rendered by United States Attorney General Robert Kennedy on October 25, 1962. The question asked was whether, in the Attorney General's opinion, the incorporators of COMSAT and the board of directors might be considered "officers of the United States" by virtue of their appointment. The Attorney General responded that the presidentially appointed directors, as well as the incorporators, were not officers of the United States by virtue of their appointment.

It is obvious from our examination of the affidavit by COMSAT's general counsel that service as a member of COMSAT's board of directors is by no means a "public office." The sentiments expressed in 1955 by our predecessors have no relevancy to the inquiry presently before us. Therefore, the members of this court advise you that your membership on COMSAT's board of directors is not subject to the provisions of article III, section 6, of the Rhode Island Constitution.

/s/Thomas F. Fay
Thomas F. Fay
Chief Justice

/s/Thomas F. Kelleher
Thomas F. Kelleher
Associate Justice

/s/Joseph R. Weisberger
Joseph R. Weisberger
Associate Justice

/s/Florence K. Murray
Florence K. Murray
Associate Justice

/s/Donald F. Shea
Donald F. Shea
Associate Justice