## OPINION OF THE JUSTICES.

### No. 282, 1994.

Supreme Court of Delaware.

Sept. 8, 1994.

To his Excellency, Thomas R. Carper,

Governor of the State of Delaware:

On July 22, 1994, you requested the Opinion of the Justices on the following question:

Is an appointment to the board of directors of the National Railroad Passenger Corporation [Amtrak] an appointment to an "office under the United States" for purpose of Article III, § 11 of the Constitution of the State of Delaware?

*Origin of Question*

The question which you have propounded to the Justices arises from the desire of the President of the United States, William J. Clinton, to appoint you to the board of directors of Amtrak. You have indicated that you intend to accept the appointment, unless to do so would violate Article III, § 11 of the Delaware Constitution, which reads:

No member of Congress, nor any person holding or exercising any office under the United States, except officers usually appointed by the courts of justice respectively and attorneys-at-law, shall at the same time hold or exercise any office of profit under this State, unless otherwise herein provided.

---

## Jurisdiction

This Court has recognized the general legal principle "that where the holder of an office accepts another incompatible office, the acceptance of the second office operates as a resignation or renunciation of the first office as fully and effectually as though the relinquishment of the first office had been an intentional and voluntary act." *State ex rel. Biggs v. Corley,* Del.Supr., 172 A. 415, 419–20 (1934). This principle of law applies where the incompatibility is declared by constitutional provisions such as Article III, § 11 of the Delaware Constitution. *Id.* Moreover, this Court has held that "when the resignation has become effective by the acceptance of the incompatible office, a resignation of the second office does not revive or restore the right to hold the first office which has thus been abandoned or resigned." *Id.*

Upon request, the Justices of this Court may give the Governor "their opinions in writing touching the proper construction of any provision in the Constitution of this State." 10 *Del.C.* § 141 and 29 *Del.C.* § 2102. *See Opinion of the Justices,* Del. Supr., 305 A.2d 608, 609 (1973). The question posed to the Justices is whether you would hold or exercise an "office under the United States" by serving as a director of Amtrak. The corollary of an affirmative response to that specific question, which you seek to avoid, is a relinquishment of the Office of Governor by virtue of the dual office prohibition in Article III, § 11 of the Delaware Constitution.

The Justices accepted your request on August 3, 1994.

## Appointment of Counsel

Bruce M. Stargatt, Esquire, of Young, Conaway, Stargatt & Taylor, and William E. Manning, Esquire, of Duane, Morris & Heckscher, were appointed to take adversary positions with respect to the question presented. 10 *Del.C.* § 141(b). Mr. Stargatt was asked to take the negative position. Mr. Manning was asked to take the affirmative position. Appearing with Mr. Stargatt, on behalf of the negative position, were Bruce L. Silverstein, Esquire, and Martin S. Lessner, Esquire. Appearing with Mr. Manning, on behalf of the affirmative position, were Richard A. Forsten, Esquire and Bonnie L. Wolfgang, Esquire. All counsel participated *pro bono publico.* The Court is grateful to each of them for the valuable service they have rendered.

The Justices directed the attorneys to file briefs in this proceeding on an expedited basis. Oral arguments were heard on September 7, 1994. This writing sets forth the Justices' unanimous answer to your question.

## Facts

The relevant facts underlying the question presented are detailed in your letter of July 22, 1994:

Amtrak is a private, for-profit corporation created by Congress pursuant to the Rail Passenger Service Act of 1970 ("the Act"), 45 U.S.C. § 501 *et seq.* The Act provides in pertinent part:

There is authorized to be created a National Railroad Passenger Corporation. The Corporation shall be operated and managed as a for profit corporation, the purpose of which shall be to provide intercity and commuter rail passenger service, employing innovative operating and marketing concepts so as to fully develop the potential of modern rail service in meeting the Nation's intercity and commuter passenger transportation requirements. The Corporation will not be an agency, instrumentality, authority, or entity, or establishment of the United States Government. It shall be subject to the provisions of this chapter and, to the extent consistent with this chapter, to the District of Columbia Business Corporation Act [D.C.Code, Section 29–301 *et seq.*]. The right to repeal, alter or amend this chapter at any time is expressly reserved.

45 U.S.C. § 541. Amtrak is chartered under the District of Columbia Business Corporation Act.

Amtrak is authorized to issue and has outstanding two classes of capital stock, a common and a preferred, both of which are eligible for dividends. *Id.* at § 544. Amtrak's common shares are held by four

other private railroads: The Grand Trunk Western Railroad Company, Burlington Northern, Inc., Soo Line Railroad Company and the Penn Central Corporation (which is no longer in business as a railroad). The United States holds Amtrak's preferred stock, which it receives in exchange for providing financial assistance to the corporation. *Id.* at § 544(c). As noted, Amtrak receives financial assistance from the federal government, which covers a portion of Amtrak's capital and operating expenses. *Id.* at § 601.

Amtrak files federal corporate income tax returns with the United States government. Amtrak's employees are not federal employees and therefore are not on a federal pay scale. Their retirement monies are paid into the Railroad Retirement Fund, as are the monies of all private sector railroad employees.

If I [Governor Carper] am appointed to the Amtrak board of directors, I will serve as one member of a nine-person board of directors selected in accordance with 45 U.S.C. § 543(a). Specifically, I would be appointed to a board seat reserved for the governor of a state "with an interest in rail transportation." *Id.* at § 543(a)(1)(C)(ii). The term of the appointment would be four years. *Id.* at § 543(a)(2)(A). The remainder of the board of directors is also made up of individuals closely associated with railroad transportation: two board members who are selected by the President from a list submitted by commuter authorities; two additional board members who are selected by the President, each of whom is required to be connected to the railroad industry; two board members who are selected by the United States as preferred shareholder; the United States Secretary of Transportation; and the President of the Corporation, who is selected by the other board members. *Id.* at § 543. Amtrak directors do not take an oath of office.... *Compare* 5 U.S.C. §§ 2104, 3331.

As an Amtrak director, I [Governor Carper] would receive $300 per diem from Amtrak when engaged in the actual performance of my duties, be reimbursed for my travel and other expenses in connection with the performance of my duties, and receive a special rail pass providing for free unlimited rail travel on Amtrak trains. 45 U.S.C. § 543(a)(5).... I [Governor Carper] am prepared to forego any such benefits if that would be necessary to ensure the compatibility of my service on the Amtrak board with my service as Governor.

... I have satisfied myself that my appointment to the Amtrak board of directors would be consistent with the proper and faithful discharge of my duties as Governor of the State of Delaware and would be in the best interests of the people of Delaware. However, in view of the opinions of the Supreme Court of Delaware addressing the effect of the acceptance by an officer of this State of a second office incompatible with his first office, *State ex rel. Biggs v. Corley,* Del.Supr., 172 A. 415, 419–20 (1934); *Opinion of the Justices,* Del.Supr., 245 A.2d 172, 174 (1968), I believe it to be necessary and prudent to seek your opinion regarding whether an Amtrak directorship is an "office under the United States" before accepting a presidential appointment to that position. *See In Re [re] Sundlun,* R.I.Supr., 585 A.2d 1185 (1991) (answering a similar question from the Governor of Rhode Island); *Opinion of the Justices,* Mass.Supr., [332 Mass. 759] 126 N.E.2d 115 (1955) (answering a similar question from the Governor of Massachusetts).

It is anticipated that the Congress of the United States will recess on August 12, 1994 and return on September 12, 1994. It is further anticipated that the Congress will adjourn for the remainder of 1994 in October. As a consequence, I respectfully request that the question posed be answered by the time Congress returns from its August recess. If you opine by that date that my service on the Amtrak board would be compatible with my service as Governor, that would permit the Senate to act upon the President's nomination of me to the Amtrak board before the adjournment of the Congress in October.

*Dual Office Prohibition Delaware Constitutional History*

Prior to Delaware's independence from England in 1776, the holding of dual offices was permissible. *State ex rel. Biggs v. Corley,* Del.Supr., 172 A. 415, 419 (1934). Nevertheless, a condition precedent to the holding of dual public offices was the requirement that those offices were neither incompatible nor inconsistent. *Id.* Even pursuant to the English common law, however, the incompatibility of any public office with another office was subject to a conclusive determination by legislative action. *Id.*

Delaware's delegates to the Continental Congress joined in the Declaration of Independence from England on July 4, 1776. Nevertheless, when Delaware adopted its first Constitution on September 20, 1776, it specifically provided that "no regular officer of the army or navy in the service and pay of the Continent, or of this or of any other state shall be eligible" for Privy Council. Del. Const. of 1776, art. 8. *See also* art. 18. Thus, at its inception in 1776, the constitutional history of Delaware reflects a desire to preserve the independence and undivided loyalty of its state officials by prohibiting the simultaneous holding of certain Delaware state offices and the public office of another "sovereignty."

On December 7, 1787, Delaware became the first state to ratify the United States Constitution. Yet, when Delaware adopted a second state constitution in 1792, it once again specifically continued the prohibitions against the holding of certain dual public offices, in particular, with regard to some offices established by its own state authority and the newly established federal sovereignty of the United States of America. Del. Const. of 1792, art. II, § 12 (legislative) and art. III, § 5 (executive). The latter section is the predecessor to the state constitutional provision which is the focus of the question now before the Justices.

Article III, § 5 of the Delaware Constitution of 1792, provided:

No member of Congress, nor person holding any office under the United States or this state, shall exercise the office of Governor.

The same provision appears in Article III, § 5 of the Delaware Constitution of 1831. In fact, during the 1831 Delaware state constitutional convention's debates, Mr. Rogers stated: "[t]he general principle that United States officers should not, at the same time, be officers of the State of Delaware was a good one." *

The history of the subsequent Delaware state constitutional convention's debates reflects that identical language was also originally proposed for inclusion in the executive article of Delaware's Constitution of 1897.

PRESIDENT BIGGS: The Secretary will please read section 7 (article III).

The Secretary then read the same as follows:

Section 7. No member of Congress, nor person holding any office under the United States or this State, shall hold or exercise the office of Governor.

It was suggested by one of the delegates to the 1897 convention, however, that this language from the executive article in Delaware's two prior constitutions (1792 and 1831) be deleted from the Delaware Constitution of 1897, because it would be covered by another new provision:

WILLIAM C. SPRUANCE: Mr. President, I think we may as well drop that section [seven] out.

To be sure, it not merely refers to Members of Congress and persons holding any office under the United States, but it also says, "or this State". But after all, the real point of the thing is, that it is not at all probable that a Governor of this State will hold any other office in this State of any consequence, except possibly to be an attorney-at-law or something of that kind—and you do not want to disqualify the lawyers.

But really the whole point of these disqualifying provisions as a general rule is

---

* William M. Gouge, *Debates of the Delaware Convention for revising the Constitution of the State or adopting a new one; held at Dover, Nov. 1831,* Delaware Gazette and American Watchman (1831).

that certain officers shall not hold two certain enumerated offices; and the real point of the provision as to the Governor is that it is contrary to the policy of the State Government that any man who is a Governor shall hold any civil office of any kind. That is the real interesting point.

That is provided for fully in the clause commencing with the 8th line of the twelfth section (article III) on page 37— "No Member of Congress, nor any person holding or exercising any office under the United States, except officers usually appointed by the courts of justice respectively and attorneys-at-law, shall at the same time hold or exercise any office of profit under this State, unless herein otherwise provided."

*That provision will prevent a Governor from holding any Federal office, and it seems to me that that is all we need to say about it.* (emphasis added).

I therefore think it would be desirable to drop this section 7 out; because you will observe if we pass it in its present form, we have not there an exception as we have in this clause of section 12—"except officers usually appointed by the courts of justice respectively and attorneys-at-law". I think this language is fuller and more comprehensive, and really meets everything that is needed.

Therefore I hope this section [seven] will be voted down. 5 Charles C. Guyer & Edmund C. Hardesty, *Delaware Constitutional Debates of 1897,* at 3199 (1958). Mr. Spruance's view did, in fact, prevail and section 7 was deleted. With the deletion of section 7 from the draft, section 12 of the draft became section 11 in Article III of what is now the Delaware Constitution of 1897.

Accordingly, the history of Delaware's constitutions reflects a consistent prohibition against dual office holding by certain state public officials. With respect to Delaware's Governor, that prohibition was unambiguous when it was adopted in 1792, 1831, and again in 1897. The incumbent Governor of Delaware may not simultaneously hold an "office under the United States." Del. Const. art. III, § 11.

*Nature of Amtrak A Nongovernmental Corporation*

There is an abundance of legal authority addressing, by implication, whether service as an Amtrak director constitutes an "office under the United States." The words of the statute authorizing the creation of the Amtrak Corporation expressly state that it is *not* "an agency, instrumentality, authority, or entity, or establishment of the United States Government." 45 U.S.C. § 541. The case authority has uniformly ascribed to the statute its plain meaning and held that Amtrak is not an entity of the United States Government.

The United States Supreme Court has rejected a claim that an agreement with Amtrak gave rise to a contractual right against the United States. *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). Pursuant to the Railway Passenger Service Act ("RPSA"), Amtrak had entered into "Basic Agreements" with railroads in which Amtrak relieved the railroads of their common carrier obligations. *Id.* The railroads subsequently argued that the Basic Agreements constituted contractual obligations of the United States. The Court disagreed, holding that the agreements "are contracts not between the railroads and the United States but simply between the railroads and the nongovernmental corporation, Amtrak." *Id.* at 470, 105 S.Ct. at 1454. *Accord National R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, ——, ——, 112 S.Ct. 1394, 1398, 1403, 118 L.Ed.2d 52 (1992).

In varying contexts, other courts have addressed the legal nature and status of Amtrak. Each of those courts has concluded that Amtrak is not an agency or instrumentality of the United States. *Lebron v. National R.R. Passenger Corp.,* 12 F.3d 388 (2d Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2098, 128 L.Ed.2d 661 (1994); *National R.R. Passenger Corp. v. Two Parcels of Land,* 822 F.2d 1261, 1264–65 (2d Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987); *Anderson v. National R.R. Passenger Corp.,* 754 F.2d 202, 204–05 (7th Cir.1985); *Ehm v. National R.R. Pas-*

*senger Corp.,* 732 F.2d 1250, 1255 (5th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 322 (1984); *Riddle v. National R.R. Passenger Corp.,* 831 F.Supp. 442, 445–46 (E.D.Pa.1993); *Wilson v. Amtrak National R.R. Corp.,* 824 F.Supp. 55, 58 (D.Md.1992); *Railway Labor Executives' Ass'n v. National R.R. Passenger Corp.,* 691 F.Supp. 1516, 1524 n. 11 (D.D.C.1988); *Kimbrough v. National R. R. Passenger Corp.,* 549 F.Supp. 169, 173 (M.D.Ala.1982); *Sentner v. Amtrak,* 540 F.Supp. 557, 560 (D.N.J.1982); *National R.R. Passenger Corp. v. Miller,* 358 F.Supp. 1321 (D.Kan.), *aff'd,* 414 U.S. 948, 94 S.Ct. 285, 38 L.Ed.2d 205 (1973); *State v. Evangelista,* 319 N.C. 152, 353 S.E.2d 375, 382 (1987).

### *Conclusion: Amtrak Directorship is Not An Office Under the United States*

The Justices have each determined, pursuant to the plain language of the statute and the persuasive judicial precedents which have construed it, that Amtrak is not an agency, instrumentality, authority, entity, or establishment "under the United States," as that phrase is used in the Delaware Constitution. From this determination, it follows that by accepting appointment to the Amtrak Board of Directors, you will not violate Article III, § 11 of the Delaware Constitution by holding or exercising an "office under the United States," during your incumbency as the Governor of the State of Delaware. Therefore, the Justices have unanimously concluded that the certified question must be answered in the Negative.

In view of our answer, we need not address the effect of your willingness to forego any of the emoluments received by an Amtrak director "to insure compatibility" with your service as Governor. In our opinion, no such relinquishment is required to assure compliance with the constitutional restriction.

Respectfully submitted,

E. NORMAN VEASEY
Chief Justice

JOSEPH T. WALSH

RANDY J. HOLLAND

MAURICE A. HARTNETT, III

CAROLYN BERGER
Justices